(82 South. 117)

CITY OF MONTGOMERY et al. v. OR-
PHEUM TAXI CO. (3 Div. 374.)

(Supreme Court of Alabama. Feb. 6, 1919.
Rehearing Denied May 15, 1919.)

1. LICENSES ⬅8(1)—POWER OF CITIES—LI-
CENSING CHAUFFEURS—STATUTE.

When Gen. Acts 1911, pp. 634–650, § 32,
is read in connection with a proviso contained
in the last part of section 23 of the state law
as to licensing chauffeurs, the effect of the first
proviso of section 32 is restricted to a sphere of
regulation by "local authorities" that excludes
the right to prescribe a chauffeur's license or
permit to drive a public service car as a condi-
tion to the free use of the streets of a city, town,
or village.

2. LICENSES ⬅7(1)—USE OF STREETS—STAT-
UTE—VALIDITY.

The provision of section 32 (Gen. Stats.
1911, pp. 634–650) forbidding local authorities
from requiring any additional license or permit
from owner or chauffeur for use of streets, etc.,
is in violation of Const. 1901, § 220, as to using
streets, etc., without consent of city authorities.

3. MUNICIPAL CORPORATIONS ⬅661(1)—USE
OF STREETS—PRESCRIBING CONDITIONS.

Since under Const. 1901, § 220, the use of
the streets, etc., of cities, towns, and villages
for the carrying on of any business for the con-
duct of any public utility or private enterprises
is made dependent upon consent of the local
municipal authorities, such authorities may pre-
scribe the conditions under which the use of the
streets, etc., may be enjoyed.

4. MUNICIPAL CORPORATIONS ⬅63(2)—ORDI-
NANCES—REASONABLENESS.

Where there is an express legislative grant
to a municipality of power to ordain to a par-
ticular effect, or to do a particular thing, the
municipal ordinance expressive of that power
cannot be inquired into with respect to its policy
or reasonableness.

5. MUNICIPAL CORPORATIONS ⬅592(1)—ORDI-
NANCE REGULATING USE OF STREETS BY TAX-
ICAB — VALIDITY — CONFLICT WITH STATE
LAW.

Penal ordinance of Montgomery prescribing
regulations for driving, parking, and stopping
of motor vehicles operated for hire, and requir-
ing chauffeurs to procure license from city and
furnish a bond, *held* valid, though in conflict
with Gen. Act 1911, pp. 634–650, § 32, in view
of Const. 1901, § 220, and Code 1907, §§ 1340,
1452.

Sayre, J., dissenting.

Appeal from Circuit Court, Montgomery
County; Gaston Gunter, Judge.

Bill by the Orpheum Taxi Company
against the City of Montgomery and the
City Commissioners to enjoin the enforce-
ment of the taxicab ordinance. There was
judgment for complainant, and respondents
appeal. Reversed and rendered.

The ordinance directed to be set out is as
follows:

Be it ordained by the board of commissioners
of the city of Montgomery, Alabama, as follows:

Section 1. *Parking Defined.*—The term "park-
ing," as herein used, means the standing of taxi-
cabs, motor driven or propelled in any other
manner, longer than may be necessary to receive
or discharge passengers, merchandise, or other
articles for whom or which he has been engaged
to transport.

Sec. 2. *Definition "Taxicab."*—The term "taxi-
cab," as used herein, shall embrace all auto-
mobiles and other vehicles of like construction
and operation employed in the carriage of pas-
sengers for hire within the city of Montgomery.

Sec. 3. *The Parking of Taxicabs.*—No taxicab
shall be permitted to park or stand at any hour
of the day or night for a longer time than is
actually necessary to receive or discharge pas-
sengers, merchandise, or other articles for whom
or which he has been engaged to carry for trans-
portation on any street in the city of Mont-
gomery, Alabama, except the city commission
may authorize taxicabs to be parked on each
side of the street not less than fifty feet apart.

Sec. 4. *Caps or Hats of Taxi Drivers.*—It
shall be unlawful for any person to drive or
operate a taxicab unless he shall wear a cap or
hat with the words "Licensed Taxicab" in plain,
legible letters appearing on the front thereof.

Sec. 5. Drivers of taxicabs for hire must not
congregate in crowds away from their vehicles,
nor shall any driver of such vehicle solicit busi-
ness in a loud or offensive tone, or in an in-
sistent manner, nor while the vehicle is in mo-
tion and must only do so while the car is stand-
ing, and he must be in his car when doing so.

Sec. 6. It shall be unlawful for any driver of
a taxicab for hire to take on or discharge pas-
sengers while the taxicab is in motion.

Sec. 7. It shall be unlawful for a taxicab for
hire to operate on the streets of the city unless
there shall be posted in a conspicuous place on
the inside of such taxicab a card, which shall
contain in legible type the rate of fare provided
for taxicabs in this city.

Sec. 8. No one shall be permitted to operate
an automobile while intoxicated or who shall
use profane language while waiting on the
streets or in the presence of his passengers.

Sec. 9. No person shall drive or operate a
taxicab who is less than eighteen (18) years of
age, or incapacitated from using both feet and
both hands to operate the vehicle.

Sec. 10. In case of accident or injury in which
a taxicab is a participant, the driver must stop
at once and ascertain the extent of the injury
and render assistance, and must give his name
and address and license number, and report the
accident to the chief of police or the sergeant
of police.

Sec. 11. *Spot Lights.*—Spot lights shall not be
lighted or used by a taxicab while in motion on
the public streets, except when projecting their
rays on the highway at a distance not exceeding
sixty (60) feet of the taxicab.

Sec. 12. It shall be unlawful for any person
to operate a taxicab who may hereafter be con-
victed of violating any ordinance of the city
or of the laws of the state of Alabama in regard
to selling liquor or transporting a person for
immoral purposes.

Sec. 13. Every person driving or operating a
taxicab in the city of Montgomery must procure
a license from the city clerk.

⬅For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

Sec. 14. The city clerk and city treasurer shall have the power and authority, and it is hereby made their duty, to examine into the qualifications and fitness of any person who may desire to operate or drive a taxicab in the city so that the safety and comfort of the general public shall not be endangered by the operation of such taxicabs. In examining persons, who may apply for examination as to their capacity to operate or drive taxicabs within the city, the city clerk and city treasurer shall enforce the following rules and regulations:

(a) Such applicant must have the free use of both hands and feet, and shall not be less than eighteen years of age, and shall have had at least six months' experience in operating automoblies.

(b) The applicant must not be of a reckless disposition nor subject to epilepsy.

(c) The applicant must state experience in operating an automobile and record of accidents, if any.

(d) The applicant must be familiar with the ordinances of the city governing the use and operation of such machines and the use on public streets.

(e) A license shall not be issued to any person to operate a taxicab unless such person is recommended in writing by three reputable and responsible citizens of Montgomery.

(f) Any person desiring to secure a license as a driver of taxicab shall make application in writing therefor to the city clerk, upon a form to be furnished by the city clerk, which shall be in such form that the applicant shall give all of the information required in the previous sections and the same shall be sworn to by him, and said applicant shall be endorsed by three reputable and responsible persons of the city, who shall certify that the applicant is a person of good habits, honest, sober, and not of a reckless disposition.

(g) The city clerk shall keep a record of the name, age, address, and occupation of all persons licensed as automobile drivers, and if any licensed driver of a taxicab shall change his residence at any time before the expiration of the license, he shall notify the city clerk of such act.

(h) The city clerk shall keep a record of the name, address, and occupation of the persons who recommended the applicant for a license, and also the sureties on the applicant's bond.

(i) The city clerk shall not grant an applicant a license unless he and the city treasurer shall agree that the applicant is a fit person to be granted a license under the provisions of this ordinance; but should the city clerk and city treasurer decide that said applicant should not be granted a license under the provisions of this ordinance, the applicant may appeal to the board of commissioners. Upon hearing the appeal the board of commissioners may direct the city clerk to issue a license to the applicant or dismiss the applicant's appeal.

Sec. 15. Said application for license shall be accompanied by a fee of one and no/100 dollars ($1.00). If such applicant is licensed as a driver of a taxicab for hire, he should be authorized for the license year ending December 31, 1918, unless his license has been revoked by the provisions of this ordinance, or some other ordinance of the city, and each year thereafter said applicant may have his license renewed upon the payment of one dollar ($1.00) for the current license year, unless he has his license revoked under the provisions of this ordinance or some other ordinance of the city: If said application is not granted, the one dollar accompanying the application shall be refunded to applicant upon his demand.

Sec. 16. It shall be unlawful for any person to drive or hold himself out as a driver of any automobile without being licensed as such driver or to borrow or lend license or badge, or to use the license or badge of another.

Sec. 17. When transporting passengers a taxicab must follow the route usually used unless informed differently by the hirer of the taxicab.

Sec. 18. Every driver of a taxicab, upon being requested to do so, shall give to any person, who has been a passenger in his automobile or who was about to be a passenger or to any military policeman, city policeman, or sheriff, the license number and name of such driver, and the license number of the automobile.

Sec. 19. White and colored passengers shall not be carried at the same time in any taxicab for hire in the city of Montgomery, provided that this provision shall not apply to colored nurses or other servants when accompanied by their employer.

Sec. 20. No person shall be licensed to drive a taxicab for hire in the city of Montgomery unless he shall furnish and maintain a bond in the sum of five hundred dollars ($500.00), said bond to be made payable to the city for the use and benefit of any person or persons injured or damaged by a taxicab which said driver may be operating. Said bond must be signed by the applicant and one or more sureties, and the sureties on said bond shall be worth at least, free of all debts and incumbrances and exemptions, twice the amount of the bond. The terms and surety of said bond to be subject to the approval of the city commissioners. It shall be unlawful for any person to operate a taxicab for hire unless he shall have previously given said bond.

Sec. 21. Any driver of a taxicab for hire who shall neglect to comply with any of the provisions of this ordinance, or who shall violate any of the provisions of this ordinance, shall for each offense, upon conviction in the recorder or municipal court, be punished by a fine of not less than five dollars ($5.00) and not exceeding one hundred and no/100 dollars ($100.00) or imprisonment not exceeding six months, and in addition to such fine or imprisonment for the first offense his license shall be suspended for ten days; for the second offense his license shall be suspended sixty days; and for the third offense his license shall be revoked and the city official convicting a person who operates a taxicab for hire under the provisions of this ordinance is hereby authorized to suspend or revoke his license.

Sec. 22. This ordinance shall not repeal any ordinance heretofore passed by the city commissioners of Montgomery, but shall be cumulative thereto except wherein they conflict with the provisions of this ordinance.

Sec. 23. If any section or provision of this ordinance shall be declared void, no other section or provision of this ordinance shall be affected thereby.

Sec. 24. All ordinances and parts of ordinances in conflict herewith are hereby repealed and this ordinance shall take effect and be in

force on the first day of October, one thousand nine hundred and eighteen, the public safety demanding it.

Horace Stringfellow and Weil, Stakely & Vardaman, all of Montgomery, for appellants.

John R. Tyson and Tilley & Elmore, all of Montgomery, for appellee.

McCLELLAN, J. The appellee filed this bill against the city of Montgomery and its officials to enjoin the enforcement of a penal ordinance wherein the use and regulation of automobiles ("taxicabs") upon the streets of the city for hire only is prescribed. The report of the appeal will reproduce the ordinance. The court below overruled the demurrer questioning the equity of the bill, and after hearing granted the injunction prayed in the bill restraining the municipal authorities from enforcing the ordinance in any respect, and so on the theory that the ordinance was wholly void because primarily it was inconsistent with the laws enacted by the Legislature.

It is insisted for appellant that the bill is without equity, on grounds discussed in Brown v. Birmingham, 140 Ala. 590, 37 South. 173, and Board of Commissioners v. Orr, 181 Ala. 308, 61 South. 920, 45 L. R. A. (N. S.) 575. The view prevailing in this court permits pretermission of the consideration of that question; and it is not, therefore, considered or decided.

The state law with which the ordinance is thought to be in conflict is the enactment entitled:

[1]"An act providing for the registration, licensing, identification and regulation of motor vehicles operated upon the public highways of this state; and fixing liability for persons riding therein, and providing penalties and punishments for violations of the provisions of said act." Gen. Acts 1911, pp. 634–650.

So far as presently pertinent, section 32 of the state law provides:

"*Local Ordinances Prohibited.*—Except as herein otherwise provided, local authorities shall have no power to pass, enforce or maintain any ordinance, rule or regulation requiring from any owner or chauffeur or other authorized driver to whom this act is applicable, any additional license or permit for the use of the public highways, or excluding any such owner, chauffeur or other authorized driver from the free use of such highways, nor to pass, enforce or maintain any ordinance, rule or regulation regulating motor vehicles or their speed contrary to the provisions of this act, nor shall any such law now in force or hereafter enacted have any effect; provided, however, that the powers given to local authorities to regulate vehicles offered to the public for hire and processions, assemblages, or parades in the streets or public places and all ordinances, rules and regulations which may have been or which may be enacted in pursu-

ance of such powers shall remain in full force and effect."

[1] When this section is read in connection with a proviso contained in the last part of section 23 of the state law—a section that makes prescriptions for the licensing of "chauffeurs"—the effect of the provisions of the state law for the licensing of chauffeurs affirmatively restricts the requirements for the licensing of such drivers to those only who drive automobiles for hire for public use, excluding from the exaction "chauffeurs" who drive automobiles devoted to private use. The particular provision for a "chauffeur's" license through state authorities (section 23), along with the broad prohibition (in section 32) against the exaction by "local authorities" of "any additional license or permit" which would interfere with the "free use of the public highways" by persons so licensed, discloses the legislative purpose to have specifically forbid the imposition or exaction of any other license or permit from or of a chauffeur who operates an automobile for hire, or for public use, thus restricting, necessarily, the effect of the first proviso in section 32 to a sphere of regulation by "local authorities" that excludes the right of the local authorities to prescribe a chauffeur's license or permit to drive a public service car as a condition to the "free use" of streets of a city, town, or village in this state.

[2] Such being the effect of the provisions of sections 32 and 23 of the act, the question is whether the provision of section 32 forbidding the prescription of "any additional license or permit" by local authorities violates the protective provisions of section 220 of the Constitution of 1901. That section reads:

"No person, firm, association or corporation shall be authorized or permitted to use the streets, avenues, alleys or public places of any city, town or village for the construction or operation of any public utility or private enterprise, without first obtaining the consent of the proper authorities of such city, town or village."

Section 24, art. 12, of the Constitution of 1875, the predecessor in partial purpose of section 220 of the present organic law, provides that "no street passenger railway shall [should] be constructed within the limits of any city or town, without the consent of the local authorities." It will be noted that the quoted section of the previous Constitution interposed its prohibition against the construction of a street passenger railway anywhere within the limits of the municipality, not confining the inhibition to public ways and places as in the present organic law, unless the local authorities consented thereto. The motive inspiring the limited prohibition set forth in the previous Constitution was to preserve against legislative action a measure

of local self-government, a character of self-determination, through "local authorities," with respect to the construction of a street passenger railway within the limits of any town or city in this state. This was the fundamental idea illustrated in section 24. The makers of the succeeding Constitution of 1901, through the committee on municipal corporations, accepted the idea thus originally expressed in the earlier organic law, and greatly amplified its application and effect, with respect to streets, etc., in the provisions of section 220. The motive was the same, viz. to restrict the power of the Legislature to the extent that it could not enact laws affecting or governing the use of local public ways that did not recognize or respect the thus permanently preserved rights of the local authorities to determine, according to their judgments, whether or not the ways and places mentioned in section 220 should be used for the purposes prescribed in section 220. There is no room for doubt or debate as to the motive inspiring the makers of the organic law, or the general purpose they entertained and undertook to effect. When read in the light of this motive and this purpose, what does section 220 mean? Recourse to the procedural development in the constitutional convention of 1901 of what became section 220 may be had with advantage in the sound interpretation of this section.

The report of the committee on municipal corporations to the convention framing the Constitution of 1901 included this, as section 5 thereof:

"No street railway, gas, water, steam or hot water heating, telephone, telegraph, electric light, or power company within a city, town or village shall be permitted or authorized to construct its tracks or mains or erect its poles, posts, or other apparatus or string its wires upon the same, along, over, under, or across the streets, avenues, alleys, or public grounds of such city, town, or village, without the consent of the proper authorities of such city, town, or village being first had and obtained."

On the sixty-fifth day of the convention's session (Journal, p. 1164) the matter now constituting section 220 (above quoted) was substituted, at the instance of the committee, for section 5, supra, as set forth in the report of the committee on municipal corporations; the chairman stating (see Debates Const. Conv. p. 211, Afternoon Session, 65th Day):

"That the substitute offered conveys the same idea contained in section 5 of the printed report, but the verbiage, I think, is slightly different, and, as the gentleman from Lee suggested, I think it is an improvement. It simply provides that no person, firm, or corporation can use the streets of a city for the purpose of carrying on any *business* without first obtaining the consent of the proper municipal authorities." (Italics supplied.)

It is to be especially observed that the original report of the municipal corporations committee (section 5, Journal, p. 409, quoted above) enumerated the subjects of the prohibition therein declared, and also that the inhibition was directed alone against the construction of tracks, mains, the erection of poles, posts, or other apparatus, or the stringing of wires upon, along, over, under, or across the public ways or places mentioned in the committee's section 5, quoted above; whereas section 220, written in far broader terms, contemplated the permanent preservation of the municipal right to control, by withholding consent, the use of the streets, etc., not only for the construction, but also, alternatively, for the operation of any public utility or private enterprise, and in the process of prescribing the subjects of the inhibition employed terms that comprehended, as the chairman stated, any business, "any public utility or private enterprise," that could use the public ways and places in the municipality. The thing over which the municipality may exercise the control contemplated is the use of the public ways and places therein; and that use is not confined to an agency that must have a superimposed or inlaid structure to avail of the use, but includes as well a use that can be enjoyed without any stable structure or construction in or upon the public ways or places in the municipality. To affirm, as is suggested, that the prohibition expressed in section 220 applies only to those agencies that require a structure in or upon these public ways or places would involve the denial of the deserved effect to the alternative introduced in the substitute for section 5 of the committee report that the operation of a public utility or private enterprise cannot be authorized or permitted, and the denial of appropriate effect to the further circumstances that the substitute for section 5 of the committee report departed from the method of enumeration of the prohibited uses and accepted the broader statement which, as the chairman stated, comprehended "any business," not simply those enumerated in the original draft for which section 220 became the substitute.

Under the provisions of sections 23 and 32 of the Automobile Law of 1911, cited ante, the state, through secretary of state, exacts of and grants to chauffeurs licenses to operate automobiles for hire. This exacting of a license is unquestionably valid to the extent that such chauffeurs are authorized to operate automobiles for hire over highways not within the restrictions of section 220 with respect to streets in cities, towns, and villages, where consent of the proper municipal authority is fixed by section 220 as a condition to the use of such public ways and places by such chauffeurs, notwithstanding such chauffeurs are licensed by the state.

It therefore results that the provision in section 32 of the Acts of 1911, cited ante, wherein municipal authorities are forbidden to require "any additional license or permit" as a condition to the use of the streets, etc., in cities, towns, or villages, is in conflict with section 220 of the Constitution of 1901, and is invalid for the reason that the effect of the provision was, if valid, to clothe chauffeurs operating automobiles for hire with the licensed right to use the streets, etc., of cities, towns, and villages "without first obtaining the consent of the proper authorities of such city, town, or village."

[3] Since the use of the streets, etc., of cities, towns, and villages for carrying on any business, for the conduct of any public utility or private enterprise, is made dependent upon the consent of the local municipal authorities, such authorities may prescribe the conditions within municipal powers under which the use of the streets, etc., may be enjoyed.

Section 1340 of the Code of 1907 confers on municipalities specified authority to license the use therein of any vehicle kept for hire. That section reads:

"To regulate and license the use of carts, drays, wagons, coaches, omnibuses, and every description of carriages and vehicles kept for hire and to license and regulate the use of the streets of the town or city by persons who use vehicles or solicit or transact business thereon."

[4] While the title of the Automobile Act of 1911 makes no particular reference to the licensing of chauffeurs (as required in sections 23 and 32 thereof), the Legislature undoubtedly assumed, and quite correctly, that under the feature of the title referring to the regulation of automobiles provision might be made for the licensing of chauffeurs to operate such vehicles. The statute (section 1340) specifically authorizes the municipal licensing of both vehicles and persons using them. Where there is an express legislative grant to a municipality of power to ordain to a particular effect or to do a particular thing, the municipal ordinance expressive of that power cannot be inquired into with respect to its policy or reasonableness. Lindsay v. Mayor, etc., 104 Ala. 257, 16 South. 545, 27 L. R. A. 436, 53 Am. St. Rep. 44.

But, even if the provisions of this ordinance creating conditions to the issuance of a chauffeur's license (viz. a nominal charge of $1, the qualifications, attested and physical, of the particular applicant to engage in the public business of driving taxicabs for hire over the streets of the city of Montgomery, and the execution and maintenance of a bond in the sum of $500, "payable to the city for the use and benefit of any person or persons injured or damaged by a taxicab which said driver may be operating,"

see § 20 of the ordinance) are considered with a view to determining their reasonableness vel non, they cannot be declared unreasonable exactions in the interest of the safety and welfare of the public in the use of the streets of the city, and of the protection of those members of the public who may suffer injury or damage by the taxicab driven by the applicant.

The features of the ordinance prescribing regulations for the driving, parking (standing), and stopping of such automobiles upon the street of the city are well within the expressly granted powers conferred by Code 1907, § 1452, which reads:

"Towns or cities have the power to regulate the running of railroad trains, or engines, or automobiles, and electric motors, within the corporate boundaries, and to prohibit the standing thereof on or across the streets or highways within the corporate boundaries."

It appears from the bill that the complainant is a corporation chartered to conduct in the city and county of Montgomery a taxicab business, and that the business it is doing is that of a common carrier of passengers for hire. It further appears that the prosecution of complainant's business is entirely dependent upon the use of the thoroughfares of Montgomery. It is manifest that, if the complainant's business is not a public utility—an assumption that is by no means certainly correct—it is undoubtedly a "private enterprise" within the meaning of section 220 of the Constitution. It is hardly necessary to add that the complainant's corporate authority to conduct its taxicab business was and is subject to the provisions of section 220 of the Constitution, as well as the effect of the statutes conferring on the municipality the power to exact licenses of those using the streets in the prosecution of their enterprises and to regulate in the interest of the public safety and welfare the use of the streets by persons and vehicles.

[5] The ordinance is not invalid. The restraint of its enforcement by the injunction issued by the court below was ill-advised, and the decree to that end is reversed. Since the ordinance is valid, the bill is without equity; and a decree will be here entered dismissing the bill.

Reversed and rendered.

All the Justices concur, except

SAYRE, J. (dissenting). Appellee filed the bill in this cause seeking to enjoin the enforcement of an ordinance of the city of Montgomery adopted for the regulation of taxicabs on the public streets of the city.

The ordinance for its own purposes defines the term "taxicab" as embracing "all automobiles and other vehicles of like construction and operation employed in the car-

riage of passengers for hire within the city of Montgomery," and provides, inter alia, that every person driving or operating a taxicab must procure a license from the city clerk, must submit to an examination by the city clerk and city treasurer as to his qualifications and fitness to operate a taxicab in the city, must be recommended in writing by three reputable and representative citizens of the city, must pay a fee of $1, and must furnish and maintain a bond in the sum of $500 with one or more sureties, payable to the city for the use and benefit of any person injured or damaged thereby. The statute of the state governing all persons who operate motor vehicles as chauffeurs provides, in short, that the secretary of state shall issue licenses to all applicants on payment of a fee of $5 and upon other terms and conditions different in some respects from those prescribed by the ordinance. Section 32 of the act provides:

"*Local Ordinances Prohibited.*—Except as herein otherwise provided local authorities shall have no power to pass, enforce or maintain any ordinance, rule or regulation requiring from any owner or chauffeur or other authorized driver to whom this act is applicable, any additional license or permit for the use of the public highways, or excluding any such owner, chauffeur or other authorized driver from the free use of such public highways, nor to pass, enforce or maintain any ordinance, rule, or regulation regulating motor vehicles or their speed contrary to the provisions of this act, nor shall any such law in force now or hereafter enacted have any effect; provided, however, that the powers given to local authorities to regulate vehicles offered to the public for hire and processions, assemblages, or parades in the streets or public places and all ordinances, rules and regulations which may have been or which may be enacted in pursuance of such powers shall remain in full force and effect; and, provided further, that local authorities may set aside for a given time a specified public highway for speed contests or races, to be conducted under proper restrictions for the safety of the public, and provided further, that local authorities may exclude motor vehicles from any cemetery or grounds used for the burial of the dead; provided, further that suitable ordinances, rules and regulations may be passed regulating speed to a reasonable slowness at crossings or in turning curves or in congested highways and streets." Gen. Acts 1911, p. 648.

It is clear on the face of the ordinance that it requires from every person driving or operating a taxicab an additional license or permit for the use of the public highways. The provisions affect the drivers of the taxicabs operated by appellee. The plain language of the body of section 32 of the act, "except as herein otherwise provided," prohibits local authorities to require an additional license of any authorized driver to whom the act is applicable, "nor shall any such law now in force or hereafter enacted have any effect, provided, however, that the powers given to local authorities to regulate vehicles offered to the public for hire and processions, assemblages, or parades in the streets or public places," shall remain unaffected. Other provisos relate to the enactment of ordinances governing the speed limit at designated places and permit the exclusion of motor vehicles from cemeteries. In ascertaining the class of drivers affected by section 32 of the act in respect of their personal license it is necessary of course to take into consideration the provisions of section 23 of the act, for the last-named section deals with the subject of the licensing of chauffeurs or drivers by the secretary of state upon terms and conditions different, as we have said, from those prescribed by the ordinance, and the state's license is the one contemplated and made exclusive by section 32 of the act. But the provisions of section 23 do "not apply to an owner of a motor vehicle for private use or any member of his family, or other person authorized by him and otherwise qualified under the provisions of this act." The provisions of section 23 do, then, apply to chauffeurs or drivers of motor vehicles offered to the public for hire, and if the provision of section 32 against the requirement of an additional license does not apply to such chauffeurs or drivers, it has no field of operation and the Legislature must be held to have expressed, in one place or the other, an elaborate and apparently careful enactment on the subject of licenses to which no meaning or effect can be assigned. We cannot accept that as a sound interpretation of the statute. We can only assume that the Legislature meant what it said when it provided for the issue of a personal license to the chauffeurs or drivers of motor vehicles offered to the public for hire, and then provided that no additional license should be required by local authorities; nor is it apparent how or in what respect the proviso • saving the powers given to local authorities to regulate vehicles offered to the public for hire conflict with the provisions as to the licensing of chauffeurs or drivers. The former has to do with the manner of using such vehicles on the public highways; the latter has to do with the personal qualifications and the licensing of the drivers or chauffeurs of such vehicles as conditions precedent to the use of the highways. We are not concerned about the wisdom of the statute, but we think that it may be assumed that the true and useful intent of section 32 is to prevent the imposition by local authorities of capricious or unequal burdens under the guise of license taxes. This seems to be the general policy of the act; for it provides that all motor vehicles shall be registered with the secretary of state, and that the fees to be paid

thereupon "shall be in lieu of all other privilege licenses which the state of Alabama or any county or municipality or other subdivision thereof might impose." Section 9. We are of the opinion, therefore, under the ordinance, in so far as it undertakes to require of appellee's chauffeurs or drivers a license in addition to that issued, such license is void and of no effect, because prohibited by section 32 of the act. Nor can we approve the suggestion that our construction brings section 32 of the act into conflict with section 220 of the present Constitution. The last-named section, reading as follows:

"No person, firm, association or corporation shall be authorized or permitted to use the streets, avenues, alleys or public places of any city, town or village for the construction or operation of any public utility or private enterprise, without first obtaining the consent of the proper authorities of such city, town or village"

—is an amplification of section 24 of the Constitution of 1875. Its purpose is, not to confer on municipalities the power to deny to persons or corporations the right to the ordinary use of the streets, avenues, alleys, or public places, as appellant seems to suggest, but to inhibit the legislative grants, especially gratuitous grants, without the consent of the municipal authorities, of the use of the streets, avenues, etc., in the construction or operation of public utilities or other business enterprises requiring the permanent occupation of a part of the streets, avenues, etc., on which it may be proposed to locate them. The section of the Constitution has no relation to such use as appellee, in common with the general public, makes of the streets of the city in merely passing over and along them. Except as limited by section 220, the authority of the Legislature over streets and highways is ample and unrestrained. State ex rel. Mobile v. Board of Revenue, etc., 180 Ala. 489, 61 South. 368.

But it is urged that the court of equity had no jurisdiction to enjoin the enforcement of the ordinance, even though invalid. Relief against the enforcement of penal ordinance has been most frequently denied on the grounds that the proceedings for their enforcement were of a criminal nature, and that equity declines to interfere with the administration of the criminal law. Some cases, however, deny the right to equitable interference on the ground that the complainant's defense to the prosecution affords him an adequate remedy at law. This is substantially the language of 5 Pomeroy's Equity Jurisprudence, § 354. In Brown v. Birmingham, 140 Ala. 590, 37 South. 173, McClellan, C. J., referring to the considerations above mentioned, announced the general rule to be that the chancery court is wholly without jurisdiction to enjoin such

quasi criminal prosecutions, however great and irreparable the damages to result from them to the party complaining may in fact be. However, he did allow as a "so-called" exception to the general rule which he announced cases in which prosecutions under a void ordinance will destroy or impair property rights to the irreparable injury of the owner. Mr. Pomeroy says the principle is generally, but not universally, accepted that the enforcement of a void municipal ordinance may be enjoined where an injunction is necessary for the purpose of preventing irreparable injury to private rights. He also states his belief that in applying the rule (announced by Chief Justice McClellan) the courts have sometimes lost sight of its qualifications, which he states to be as well settled as the rule itself, that a court of equity may in a proper case interfere by injunction to restrain any act or proceeding, whether connected with crime or not, which tends to the destruction of property or property rights. In Bryan v. Birmingham, 154 Ala. 447, 45 South. 922, 129 Am. St. Rep. 63, after referring to the rule of Brown v. Birmingham, the court repeated in substance Mr. Pomeroy's remarks on the necessity of observing the qualifications in favor of property and property rights, citing Austin v. Austin, 87 Tex. 330, 28 S. W. 528, 47 Am. St. Rep. 114; Atlanta v. Gate City Co., 71 Ga. 106; Deems v. Baltimore, 80 Md. 164, 30 Atl. 648, 26 L. R. A. 541, 45 Am. St. Rep. 339. In Austin v. Austin the court quoted with approval from Atlanta v. Gate City Co. as follows:

"Where it is manifest * * * that a prosecution and arrest is threatened for an alleged violation of city ordinances for the sole purpose of preventing the exercise of civil rights conferred directly by law, injunction is the proper remedy to prevent injury to the party thus menaced."

And in Deems v. Baltimore it had been said that—

"Where an ordinance is void and its provisions are about to be enforced, any party whose interests are to be injuriously affected thereby may and properly ought to go into a court of equity and have the execution of the ordinance stayed by injunction."

In Bryan v. Birmingham the bill charges that the ordinance there in question created an arbitrary and unreasonable discrimination; but the court held that the evidence did not sustain the charge. In Greensboro v. Ehrenreich, 80 Ala. 579, 2 South. 725, 60 Am. Rep. 130, Cuba v. Mississippi Cotton Oil Co., 150 Ala. 259, 43 South. 706, and Mobile v. Orr, 181 Ala. 308, 61 South. 920, 45 L. R. A. (N. S.) 575, ordinances affecting property rights were declared void because they were not regarded as legitimate exercises of the powers conferred by the Leg-

islature upon the municipal authorities. An instructive discussion of the underlying principle of these cases is found in Mobile v. L. & N. R. R. Co., 84 Ala. 115, 4 South. 106, 5 Am. St. Rep. 342. In Brown v. Birmingham we think it should be noted there was no interference with any useful business. In the Supreme Court of the United States it is well settled that, where property rights will be destroyed, unlawful interference by criminal proceedings under a void ordinance may be reached and controlled by a decree of a court of equity. Davis & Farnum Mfg. Co. v. Los Angeles, 189 U. S. 207, 218, 23 Sup. Ct. 498, 47 L. Ed. 778. In Dobbins v. Los Angeles, 195 U. S. 223, 25 Sup. Ct. 18, 49 L. Ed. 169, it is said that, while it is admitted that every intendment must be made in favor of the lawfulness of the exercise of municipal power making regulations to promote the public health and safety, and while it is not the province of the courts, except in clear cases, to interfere with the exercise of the power reposed by law in municipal corporations for the protection of local rights and the health and welfare of the people in the community, notwithstanding this general rule of the law, it is now thoroughly well settled by the decisions of that court that municipal bylaws and ordinances undertaking to regulate useful business enterprises are subject to investigation in the courts with a view to determining whether the law or ordinance is a lawful exercise of the police power, or whether under the guise of enforcing police regulations there has been an unwarranted and arbitrary interference with the constitutional rights to carry on a lawful business, to make contracts, or to use and enjoy property.

Appellee, a corporation, is engaged in a lawful and useful business. It is doing what every individual, subject to proper regulation, of course, is entitled to do as of common right. "The English and American courts have, we believe, without exception, held that the right to conduct one's business, without the wrongful and injurious interference of others, is a valuable property right which will be protected, if necessary, by the injunctive processes of equity." Hardie-Tynes Mfg. Co. v. Cruse, 189 Ala. 66, 66 South. 657. Appellee can only perform its corporate functions, can only do the business it is organized and authorized under the laws of the state to do, through the agency of chauffeurs employed to drive its cars. No one, however great his faith in the judicial insight of police magistrates and their willingness to declare municipal ordinances void, cares to be subjected to the annoyance of a prosecution in the police court. Criminal prosecutions under the most favorable conditions are not only un-

pleasant, but almost necessarily involve inconvenience and expense to the person who figures as the party defendant, and it is reasonably clear that, if every chauffeur must comply with the unlawful requirements of this ordinance or submit to a prosecution whenever he drives appellee's cars along the street, appellee's business must suffer a serious interruption for the consequences of which no one can be made to answer in damages. To paraphrase the language of Gaines, C. J., in Austin v. Austin, supra, as long as the ordinance remains undisturbed, it acts in terrorem and practically accomplishes a prohibition against appellee's business unless it be conducted according to the unlawful demands of the ordinance.

I have said enough to indicate my opinion that the ordinance is void because in conflict with the statute of the state. I do not think that other objections urged against it need be considered. The decree is right, and should be affirmed.