(98 South. 578)

### BIRMINGHAM INTERURBAN TAXICAB SERVICE CORPORATION v. McLENDON et al., Commissioners. (6 Div. 46.)

(Supreme Court of Alabama. Dec. 22, 1923.)

**I. Municipal corporations ⊚⇒703(1)—Taxicab company has no natural or inherent right to operate vehicles on streets.**

Under Const. 1901, § 220, prohibiting the use of streets for the operation of any public utility or private enterprise without the consent of the proper authorities of the city, town, or village, a taxicab corporation has no natural or inherent right to operate motor vehicles as carriers of passengers on the street of a city.

**2. Carriers ⊚⇒8—City commission not concluded by findings of commissioner making investigation of application for taxicab licenses.**

Under an ordinance vesting in a commissioner the duty of receiving applications for taxicab licenses and of making an investigation and a report as to the fitness of the vehicles and the qualifications of proposed operators to the commission, the work of such commissioner is merely advisory, and the city commission is not concluded by his findings of fact.

**3. Carriers ⊚⇒8—City commission empowered to refuse application for taxicab license, if public necessity and convenience does not require issuance.**

Under Const. 1901, § 220, prohibiting the use of streets for operation of any public utility or private enterprise without the consent of the city authorities, the city, by an ordinance providing for the issuance of licenses for operation of taxicabs, held not to grant to all persons the right to operate taxicabs on compliance with regulations, but to reserve the right in the commission's discretion to refuse an application on finding that public necessity and convenience do not require the issuance of the license.

**4. Carriers ⊚⇒18(6) — Court not empowered to restrain interference with use of streets by taxicab company refused a license.**

Under Const. 1901, § 220, prohibiting the use of streets for any public utility or private enterprise without the consent of the city authorities, and an ordinance empowering a city commission to grant or refuse licenses to use streets for taxicab purposes, a court could not enjoin the city authorities from interfering with the operation of a taxicab business, following the commission's rejection of the company's application for licenses, since the discretion of the commission cannot be controlled by injunction.

**5. Injunction ⊚⇒129(2)—Rule as to dismissal of bill on motion for dissolution of injunction stated.**

Under Chancery Rule No. 96 (Code 1907, vol. 2, p. 1558), the court in passing on motion to dissolve an injunction should pass upon the equity of the bill, treating all amendable defects as amended, and, if without equity, may properly dismiss the bill.

Appeal from Circuit Court, Jefferson County; William M. Walker, Judge.

Bill for injunction by the Birmingham Interurban Taxicab Service Corporation against D. E. McLendon and others, as commissioners of the city of Birmingham. From a decree dissolving temporary injunction and dismissing the bill, complainant appeals. Affirmed.

The bill alleges that complainant on September 24, 1923, made written application for 45 taxicab licenses to W. B. Cloe, as commissioner of public safety of the city of Birmingham, whose duty it was immediately to inspect and examine each motor which was described in the application, to ascertain whether such vehicles were safe and proper, and to ascertain whether such vehicles were to be driven by chauffeurs duly qualified under the law, and, after such inspection, to report his findings to the city com-

mission, so that the commission could by resolution grant or refuse such application; that Cloe arbitrarily and capriciously, refused to make such inspection and examination, but, after much urging and solicitation on the part of the applicant, and after a long period of delay and waiting, reluctantly went through the form of an inspection; that said inspection and examination was not a bona fide and reasonable exercise of his power and authority, but was a capricious, arbitrary, and a willful abuse thereof, prompted by improper and malicious motives, in that said Cloe had theretofore expressed resentment, personal hatred, ill will, and malice towards some of the incorporators of complainant, and employed as aids in making such inspection persons under his dominion and influence, instead of disinterested, skilled persons; that on October 10 or 11, 1923, such form of inspection was had, and, notwithstanding many of the vehicles examined and inspected fully met the requirements of law, said Cloe capriciously and arbitrarily reported that none of said vehicles were safe, proper, clean, or otherwise suitable for use as public vehicles, and that none of the chauffeurs were qualified, which was untrue, as many, if not all, of said chauffeurs were duly qualified under the law and ordinances of the city; that complainant was only notified late the afternoon before that such examination would be made the following morning, and was therefore prevented from having a fair and impartial inspection of its vehicles.

It is further alleged that on October 12, 1923, the city commission of Birmingham capriciously and arbitrarily adopted and ratified the report of said Cloe, without further investigation, declaring that "in the opinion of the commission the public necessity and convenience does not require the issuance of said licenses or any of them"; and that said action by the commission was unreasonable and capricious, and a tyrannical, autocratic, and malicious abuse of a sound discretion in the premises, and not founded upon the facts.

It is further averred that complainant is ready and willing to carry on and transact a taxicab business in the city of Birmingham; that it has tendered to the city comptroller lawful currency for 28 taxicab licenses, for vehicles which, under a fair inspection, will meet all the requirements of law, but which tender said comptroller refused.

The prayer is that the report of the commissioner Cloe and the adoption thereof by the city commission be declared not a fair and impartial exercise of discretionary power in the premises; and that respondents, their agents, etc., be enjoined from interfering with complainant in the transaction of its business.

On October 15, 1923, temporary injunction, as prayed, was issued against respondents. On October 16, 1923, respondents filed a motion to dissolve the temporary injunction, on the ground of no equity in the bill.

The cause was submitted on the bill and motion to dissolve; and on October 17th the court entered a decree dissolving the temporary injunction and dismissing the bill. From that decree complainant appeals.

Ralph W. Quinn, William F. Spencer, and Thomas C. McClellan, all of Birmingham, for appellant.

The taxicab business is a recognized lawful business under the laws of the state of Alabama, and under the ordinances of the city of Birmingham, and the complainant had a right to engage in such business in said city upon complying, or doing all in his power to comply, with the prescribed conditions under said law and ordinances. Const. 1901, § 220; City of Montgomery v. Orpheum Taxi Co., 203 Ala. 103, 82 South. 117; Ordinance 759–C, City of Birmingham (209 Ala. 544, 96 South. 704). The right to conduct one's business without the unlawful and injurious interference of others is a valuable property right, which will be protected, if necessary, by the injunctive process of equity. Hardie-Tynes Mfg. Co. v. Cruse, 189 Ala. 66, 66 South. 657; Bryan v. City of Birmingham, 154 Ala. 447, 45 South. 922, 129 Am. St. Rep. 63. The discretionary power conferred upon municipalities in the matter of regulating traffic upon the streets and highways should be exercised in a reasonable manner, and not arbitrarily or capriciously, and said discretionary power is not unlimited or unbridled and the same cannot be palpably abused. Const. 1901, § 220; Cloe v. Hale, 209 Ala. 544, 96 South. 704; Pilcher v. City of Dothan, 207 Ala. 421, 93 South. 16; 17 R. C. L. 561. While mandamus is ordinarily the proper remedy to require officers to act, it does not lie where there is adequate remedy otherwise, or to direct the manner of exercising discretion. Injunction is the proper remedy here. Mobile v. Cleveland, 76 Ala. 321; Bourke v. Olcutt Water Co., 84 Vt. 121, 78 Atl. 715, 33 L. R. A. (N. S.) 1015, Ann. Cas. 1912D, 108; 14 R. C. L. 438; 17 R. C. L. 561. There was no motion to dismiss the bill, and this action of the court constituted error to reverse. Chancery rule 96 has no application here. Johnson v. So. B. & L. Ass'n, 132 Ala. 173, 31 South. 496; Wills Valley Co. v. Galloway, 139 Ala. 276, 35 South. 850.

W. J. Wynn and W. A. Jenkins, both of Birmingham, for appellees.

A court of equity will not by injunctive process coerce public officers in the performance of their official duties. Pryor Motor Co. v. Hartsfield, 207 Ala. 646, 93 South. 524. Equity will not enjoin the enforcement of

a valid municipal ordinance. Brown v. City of Birmingham, 140 Ala. 590, 37 South. 173; City of Montgomery v. Orpheum Taxi Co., 203 Ala. 103, 82 South. 117; Giglio v. Barrett, 207 Ala. 278, 92 South. 668; Harris v. Barrett, 206 Ala. 263, 89 South. 717. No one has a common right to use the streets of a municipality for the carriage of passengers for hire. Const. 1901, § 220; Cloe v. State ex rel. Hale, 209 Ala. 544, 96 South. 704. The granting or withholding of permits to operate taxicabs on the streets of the city of Birmingham is a matter resting within the discretion of the commission. Birmingham Ordinance No. 759-C (Cloe v. State ex rel. Hale, supra); Pilcher v. City of Dothan, 207 Ala. 421, 93 South. 16. It was the duty of the court, on sustaining the motion of respondents to dissolve the temporary injunction for want of equity in the bill, to dismiss the bill. Chancery rule 96, Civil Code, p. 1558; Dailey v. Koepple, 164 Ala. 317, 51 South. 348.

BOULDIN, J. Const. Ala. 1901, § 220, reads:

"No person, firm, association or corporation shall be authorized or permitted to use the streets, avenues, alleys or public places of any city, town, or village for the construction or operation of any public utility or private enterprise, without first obtaining the consent of the proper authorities of such city, town or village."

This section was construed in City of Montgomery v. Orpheum Taxi Co., 203 Ala. 103, 82 South. 117.

We there held that its terms, "contemplated the permanent preservation of the municipal right to control, by withholding consent, the use of the streets * * * for the operation of any public utility or private enterprise," mean "to preserve against legislative action a measure of local self-government," "to restrict the power of the Legislature to the extent that it could not enact laws affecting or governing the use of local public ways that did not recognize or respect the thus permanently preserved rights of the local authorities to determine, according to their judgment, whether or not such ways and places mentioned in section 220 should be used for the purposes prescribed in section 220." It was further declared: "The thing over which the municipality may exercise the control contemplated is the use of the public ways and places therein."

A taxicab company, doing the business of a common carrier of passengers for hire, was therefore held to be either a "public utility," or a "private enterprise," within the meaning of section 220 of the Constitution. This case further declared that such taxicab companies are subject to statutes conferring power to exact licenses and to regulate in the interest of the public safety and welfare the use of the streets by persons and vehicles.

In Cloe v. State ex rel. Hale, 209 Ala. 544, 96 South. 704, the pertinent provisions of ordinance 759-C, regulating the granting of such license, was set out. That was a mandamus proceeding to require the commissioner of public safety to issue a license to a jitney bus to operate on a special route. The court said:

"The petitioner has no natural or inherent right to operate motor vehicles, as common carriers of passengers, on the streets of Birmingham"—citing City of Montgomery v. Orpheum Taxi Co., 203 Ala. 103, 82 South. 117; Const. 1901, § 220.

This case further holds that the commissioner of public safety is vested with no power to issue licenses; that this power is in the commission; that the granting of licenses is in their discretion at least as to the number of vehicles the needs of the public require, or the character of the streets and the convenience and safety of traffic permit.

The equity of the present bill must rest upon one of two theories: First, that complainant has a natural property right to use the streets of Birmingham in the conduct of its business upon complying with the regulations applying thereto; or, second, the commission has granted such right to any and all persons who conform to these regulations. Upon such premise it is claimed that an arbitrary, capricious abuse of discretion has deprived complainant of a property right to its injury.

[1] The clear language of section 220 of the Constitution admits of no other construction than that given in the cases above reviewed. "No" one shall be authorized or "permitted to use the streets" for the purposes named "without first obtaining the consent" of the "proper authorities" of the "city."

The framers of section 220, above, must have foreseen the increasingly acute situation on the streets of our cities. The control of the streets in conserving the public safety and convenience was deemed an essential sovereign power in the local authorities, who alone can keep an eye on conditions, and meet the needs as they arise.

It may be noted that section 220, and a new section, 221, protecting municipalities in the matter of privilege taxes, were made the first sections of the article on municipal corporations. They are in the nature of a bill of rights. They recognize certain fixed, constitutional rights which shall not be invaded.

The privilege of operating a taxicab business as a common carrier of passengers for hire upon the streets of a city is in the nature of a franchise or easement. Under our

Constitution it can be acquired only from the city authorities—from the commission in Birmingham.

Whatever may be the right of complainant to obtain a permit, it must come through the commission. Taking as true all that is averred to the effect that the refusal has been arbitrary, capricious, malicious, and autocratic, and granting for argument that such abuse of discretion would warrant a mandamus to compel the issuance of license under the ordinance, it does not follow that such "consent" can be given by the indirect process of injunction.

The prayer of the bill is for an injunction to restrain and enjoin the city authorities from molesting or interfering with complainant in carrying on a taxicab business in Birmingham and vicinity. The temporary injunction is so framed. By this process complainant is "permitted" to carry on its business without the "consent" of the city authorities.

That Ordinance No. 759-C is valid is not questioned. In studying the ordinance, we should keep in mind the distinction between regulating a business and granting a franchise or license to do business. The power to regulate traffic upon the streets in the interest of the public safety and convenience is a charter power granted by the Legislature. The power to grant the franchise or easement here involved—to consent or not to consent to a taxicab business on the streets of Birmingham—is a power guaranteed by the Constitution. This power the Legislature and the courts must alike respect.

[2] As noted in Cloe v. State ex rel. Hale, 209 Ala. 544, 96 South. 704, Ordinance No. 579-C does not vest in the commissioner of public safety any power to grant license or to pass on an application therefor. His duties are to receive the application, make investigation, and report as to the fitness of the vehicles, and the qualification of proposed operators, and present both to the commission. His work is merely advisory, like that of an investigating committee. The commission is not concluded by his findings of fact. They may make further investigation. Neither does the ordinance require the granting of license if all the required facts are shown to the satisfaction of the commission. The commission "shall * * * by resolution grant or refuse to applicant a license."

The commission of the city of Birmingham is its governing body, invested with legislative, executive, and judicial powers. As stated in the case last cited, it has in this ordinance reserved the power to grant license.

[3] The whole question of determining whether the public necessity demands, or the public safety and convenience will be promoted, by granting a permit to a transportation company to operate on the streets of the city, is left to the judgment and discretion of the commission. This is in the nature of a legislative discretion. In the resolution denying complainant's application for license, the commission expressly found that the public necessity and convenience did not require the issue of the license. We are of opinion this finding was within its powers.

[4] Whether the governing body may by ordinance express a general "consent" that all persons or a given number shall, on compliance with fixed regulations, be entitled to taxicab license, so that the officer directed to issue them may be controlled by mandamus, is a question we need not determine. We conclude the commission has not given such general consent, and its action cannot be controlled by injunction. Pryor Motor Co. v. Hartsfield, 207 Ala. 646, 93 South. 524; Giglio v. Barrett, 207 Ala. 278, 92 South. 668; Harris v. Barrett, 206 Ala. 263, 89 South. 717; Pilcher v. City of Dothan, 207 Ala. 421, 93 South. 16; Brown v. Mayor and Aldermen of Birmingham, 140 Ala. 590, 37 South. 173.

We conclude the bill is without equity. The lower court, so holding, dissolved the injunction, and dismissed the bill. There was no motion to dismiss the bill nor submission thereon.

In Johnson v. Southern B. & L. Ass'n, 132 Ala. 173, 31 South. 496, it was held error to dismiss the bill when submitted solely on motion to dissolve the injunction.

[5] In Dailey v. Koepple, 164 Ala. 317, 51 South. 348, it was held that, where a bill cannot be so amended as to import equity, the court may dismiss it ex mero motu. Such decree can work no injury. On motion to dissolve an injunction for want of equity, all amendable defects are treated as amended. Thompson v. Johnson, 201 Ala. 315, 78 South. 91. Chancery Rule 96, Code, 1907, vol. 2, p. 1558, contemplates that the court in considering such motion to dissolve the injunction, shall pass upon the equity of the bill, and, if without equity, dismiss it. The rule is intended to apply to cases of class defined in Dailey v. Koepple, supra.

If the injunction is merely in aid of other relief sought, and the bill is amendable in form or in substance so as to give it equity without a departure as defined by the amendment statute, it should not be dismissed ex mero motu.

We consider this case within the principle of Dailey v. Koepple, supra, and City of Montgomery v. Orpheum Taxi Co., supra, and find no reversible error in the decree of the court below.

The injunction reinstated under order of October 30, 1923, will be dissolved, and the decree of the court below affirmed.

Affirmed.

ANDERSON, C. J., and SOMERVILLE and THOMAS, JJ., concur.