**Lillie BOMAN et al., Appellants,**

v.

**BIRMINGHAM TRANSIT COMPANY,**
Appellee.

No. 18187.

United States Court of Appeals
Fifth Circuit.

July 12, 1960.

Arthur D. Shores, Birmingham, Ala., Thurgood Marshall, Jack Greenberg, New York City, James M. Nabrit, III, Washington, D. C., of counsel, for appellants.

James C. Barton, J. M. Breckenridge, Birmingham, Ala., Deramus, Fitts & Johnston, Birmingham, Ala., of counsel, for appellee.

Before TUTTLE, CAMERON and WISDOM, Circuit Judges.

TUTTLE, Circuit Judge.

This is an appeal from a judgment dismissing a class action on behalf of Negro patrons of the Birmingham Transit Company seeking to enjoin it from enforcing its published rule of seating passengers according to race.

The suit joined the City Commissioners of Birmingham as individuals and the Bus Company. It was alleged that the Company and the Commissioners were illegally enforcing a state law or policy of insisting on racial segregation of the seating in the buses, and that although the City of Birmingham was not joined, the officials, one of whom was the Police Chief, and the Bus Company were agents of the state in requiring segregated seating.

This suit was brought soon after the City of Birmingham repealed the provisions of its code that had long required separate seating on City buses of Negro and white patrons. On the day the old ordinances were repealed a new one, No. 1487–F, was enacted by the City Commission. It provided as follows:

"Section 1. That carriers of passengers for hire operating in the City of Birmingham are authorized to formulate and promulgate such rules and regulations for the seating of passengers on public conveyances in

their charge as are reasonably necessary to assure the speedy, orderly, convenient, safe and peaceful handling of passengers.

"Section 2. A willful refusal to obey a reasonable request of an operator or driver of such a public conveyance in relation to the seating of passengers thereon shall constitute a breach of the peace."

At approximately the same time as the enactment of this ordinance the Bus Company put new buses into service. Instead of having movable "color boards," separating the white and Negro portions of the bus, the Company painted signs at the front and rear of each bus:

"White Passengers Seat From Front,
Colored Passengers from Rear."

Within a few days of this, a group of some twenty-five Negroes, including the plaintiffs in this action, boarded a bus and proceeded to sit in the front of the bus. The driver closed the doors of the bus and permitted no one else on the bus; he requested the passengers to move to the rear. They declined to do so. Thereupon, the driver called his supervisor, holding the bus out of operation in the meantime. The supervisor arrived and he asked the passengers to move to

the rear. They again declined to do so. Then a police traffic officer arrived and a crowd began to gather. The police officer called his superior who went to the scene and ordered the operator to take the bus to the barn. Then two other police officers arrived and after another request by the operator that the passengers move, again fruitless, they arrested nine of them. They were held in jail until 2:00 A.M., released on bond, charged with disorderly conduct, conspiracy to commit a breach of the peace and a breach of the peace. After trial and conviction they were held in jail some five days awaiting sentence; thereafter they were released on appeal bonds.

The trial court held that the arrest of the appellants was illegal and was a deprivation by the individual officers of their civil rights.[1] It found, however, that the individual officers acted on their own responsibility as police officers and not at the request of the Bus Company or under orders from the three City Commissioners or Chief of Police. The court found that the segregated seating rule was established by the Company on its own responsibility and that its driver sought only to use the quiet persuasion enjoined upon him by the instructions issued by the Company.[2] It is not disputed that

[1.] In this regard the Court said:

"A charge of 'a breach of the peace' is one of broad import and may cover many kinds of misconduct. However, the Court is of the opinion that the mere refusal to obey a request to move from the front to the rear of a bus, unaccompanied by other acts constituting a breach of the peace, is not a breach of the peace. In as far as the defendants, other than the Transit Company, are concerned, plaintiffs were in the exercise of rights secured to them by law.

. . . .

"Under the undisputed evidence, plaintiffs acted in a peaceful manner at all times and were in peaceful possession of the seats which they had taken on boarding the bus. Such being the case, the police officers were without legal right to direct where they should sit because of their color. The seating arrangement was a matter between the Negroes and the Transit Company. It is evident that the arrests at the barn were based on the

refusal of the plaintiffs to comply with the request to move since those who did move, though equally involved except as to compliance, were not arrested.

"Under the facts in this case, the officers violated the civil rights of the plaintiffs in arresting and imprisoning them. Ordinance 1487-F, and their 'willful' refusal to move when directed to do so, did not authorize or justify their conduct."

[2.] These were in the form of two bulletins as follows:

"Bulletin Order.
Birmingham Transit Company.
Date Effective: Thursday, October 16, 1958.
Bulletin Order No. 176.
Subject: Ordinance Covering the Separation of Races.
All Concerned:
As you have seen in the newspapers, the City Commission has unanimously repealed all bus segregation ordinances to become effective Thursday, October 16, 1958. Signs have been placed in

the bus operators were instructed not to call the police in case of refusal to move. They were instructed to call their supervisor and in the meantime to hold the bus.

■ The appellants, having failed in their proof to show joint or agreed action between the appellee and the City Commissioners, lost the opportunity to argue that the Bus Company's action was, *for that reason,* state action. The trial court decided that this caused the case against the Bus Company to collapse and dismissed the suit as to it.

Appellants here assert the proposition that the City ordinance expressly granting authority to the franchised transit company to adopt seating rules at the identical meeting at which it repealed the compulsory segregation ordinance, so delegated the City's governmental authority, especially when the ordinance contained criminal sanctions for violation of the Company's rule, as to make the Company's adoption of the segregation rule state action.

■ Because of the peculiar function performed by this Transit Company as a public utility, and its relation to the City and State of Alabama through its holding of a special franchise to operate on the public streets of Birmingham, we conclude that so long as such an ordinance was in force, the acts of the Bus Company in requiring racially segregated

seating were state acts and were thus violative of the appellants' constitutional rights. Browder v. Gayle, D.C.M.D.Ala., 142 F.Supp. 707, affirmed 352 U.S. 903, 77 S.Ct. 145, 1 L.Ed.2d 114; Flemming v. South Carolina Elec. & Gas Co., 4 Cir., 224 F.2d 752.

It was alleged in the complaint that the Bus Company "is engaged in operating within the corporate limits and police jurisdiction of said City [Birmingham], a bus line for transportation of passengers for hire, pursuant to a franchise issued by said City of Birmingham." This allegation was, as it must have been, admitted in the answer.

■ The issuing of such a franchise by the City of Birmingham is a governmental function, controlled and authorized by the constitution of Alabama. Section 220 of the Constitution of 1901 reads:

"No person, firm, association, or corporation shall be authorized or permitted to use the streets, avenues, alleys or public places of any city, town, or village for the construction or operation of any public utility or private enterprise, without first obtaining the consent of the proper authorities of such city, town or village."

Such "consent" has uniformly been held by the Alabama Supreme Court to

---

front and rear of all of our buses which read as as follows:

White Passengers seat from front.

Colored Passengers from rear.

Every effort should be used to avoid conflicting problems. May we suggest that you use calmness and your very best judgment in handling any situation that might arise.

> J. E. Crutchfield, Superintendent of Transportation."

"Bulletin Order.

Birmingham Transit Company

Date Effective: October 16, 1958.

Bulletin Order No. 177.

Subject: Handling of Passengers.

Date Posted: October 15, 1958.

All Operators:

In view of the repealing of ordinances having to do with the separation of passengers on buses, the following instructions are set forth in order that each

operator will be relieved of the responsibility for problems that might possibly be encountered.

If instances should arise wherein passengers do not comply with the reasonable rules that are now in effect with reference to seating in buses the operator will approach the passengers involved and talk with them in a tactful manner and in a low voice, and request the cooperation of such passenger in complying with Company rules to further the safe and peaceful handling of passengers.

If the parties refuse, then you will notify the Dispatcher's office by nearest telephone as you have been doing.

You are aware of the existing conditions, and we request that you use calmness and your best judgment in handling any situation that might arise.

> J. E. Crutchfield,
> Superintendent of Transportation."

be a franchise. Birmingham Interurban Taxicab Service Corp. v. McLendon, 210 Ala. 525, 98 So. 578, 579. In the more recent case of City of Mobile v. Farrell, 229 Ala. 582, 158 So. 539, 540, the court said:

"The right to use the public streets for hire does not exist in public or private enterprises. The privilege is a grant by sovereign authority, and is what is generally termed a franchise [citing cases.]"

Further, in the same opinion, the court said:

"In construing the effect of a grant it must not be forgotten that it is in the nature of a privilege thus extended *as well as the regulation of a business* in which the grantee has no right otherwise to engage." (Emphasis added.)

■ It is, of course, fundamental that the justification for the grant by a state to a private corporation of a right or franchise to perform such a public utility service as furnishing transportation, gas, electricity, or the like, on the public streets of the city, is that the grantee is about the public's business. It is doing something the state deems useful for the public necessity or convenience. This is what differentiates the public utility which holds what may be called a "special franchise,"[3] from an ordinary business corporation which in common with all others is granted the privilege of operating in corporate form but does not have

that special franchise of using state property for private gain to perform a public function.

■■ Of course, the simple company rule that Negro passengers must sit in back and white passengers must sit in front, while an unnecessary affront to a large group of its patrons, would not effect a denial of constitutional rights if not enforced by force or by threat of arrest and criminal action. Where, as here, the City delegated to its franchise holder the power to make rules for seating of passengers and made the violation of such rules criminal, no matter how peaceable, quiet or rightful (as the court here held), such violation was, we conclude that the Bus Company to that extent became an agent of the State and its actions in promulgating and enforcing the rule constituted a denial of the plaintiffs' constitutional rights.

■ We think that there is nothing in Eaton v. Board of Managers of James Walker Memorial Hospital, D.C., 164 F. Supp. 191, affirmed 4 Cir., 261 F.2d 521, certiorari denied 359 U.S. 984, 79 S.Ct. 941, L.Ed.2d 934, or Williams v. Howard Johnson's Restaurant, 4 Cir., 268 F.2d 845, that is inconsistent with what we have said here. Moreover, we fully recognize what has been known by all to be the law since the Supreme Court decided the Slaughter-House Cases, 16 Wall. 36, 83 U.S. 36, 21 L.Ed. 394, that "the action inhibited by the first section of the Fourteenth Amendment is only such ac-

---

3. In Black's Law Dictionary the following comment is pertinent:
   "Franchise
   \*     \*     \*     \*     \*
   "General and Special. The charter of a corporation is its 'general' franchise, while a 'special' franchise consists of any rights granted by the public to use property for a public use but with private profit. Lord v. Equitable Life Assur. Soc., 194 N.Y. 212, 87 N.E. 443, 22 L.R.A.,N.S., 420.
   \*     \*     \*     \*     \*
   "Secondary Franchises. The franchise of corporate existence being sometimes called the 'primary' franchise of a corporation, its 'secondary' franchises are the special and peculiar rights, privileges,

or grants which it may receive under its charter or from a municipal corporation, such as the right to use the public streets, exact tolls, collect fares, etc. State v. Topeka Water Co., 61 Kan. 547, 60 P. 337; Virginia Canon Toll Road Co. v. People, 22 Colo. 429, 45 P. 398, 37 L.R.A. 711. The franchises of a corporation are divisible into (1) corporate or general franchises; and (2) 'special or secondary franchises.' The former is the franchise to exist as a corporation while the latter are certain rights and privileges conferred upon existing corporations. Gulf Refining Co. v. Cleveland Trust Co., 166 Miss. 759, 108 So. 158, 160."

tion as may fairly be said to be that of the States * * *." Shelley v. Kraemer, 334 U.S. 1, 68 S.Ct. 836, 842, 96 L.Ed. 1161. We are forced to the conclusion here that the conduct of the Bus Company "may fairly be said to be that of the" State of Alabama through its franchising of the Bus Company and its authorizing it to adopt the rule in question enforceable by criminal sanctions.

The judgment must be Reversed and the cause Remanded for further proceedings not inconsistent with this opinion.

CAMERON, Circuit Judge. I dissent.