298 F.2d 696
 James H. MEREDITH, on behalf of himself and others similarly
situated, Appellant,
v.
Charles Dickson FAIR, President of the Board of Trustees of
the State Institutions of Higher Learning, et al.,
Appellees.
 No. 19394.
 United States Court of Appeals Fifth Circuit.
 Jan. 12, 1962, On Petition for Rehearing April 10, 1962.
 
 Constance Baker Motley, New York City, R. Jess Brown, Vicksburg, Miss., for appellant.
 Dugas Shands, Asst. Atty. Gen., Charles Clark, Special Asst. Atty. Gen., for appellees.
 Before TUTTLE, Chief Judge, and RIVES and WISDOM, Circuit Judges.
 WISDOM, Circuit Judge.
 
 
 1
 James H. Meredith is a Mississippi Negro in search of an education. Mississippi is one of three states which have not yet allowed a Negro citizen to seek an education at any of its state-supported, 'white' colleges and universities.[1]
 
 
 2
 After graduation from high school at the age of seventeen, Meredith volunteered for the United States Air Force. He was honorably discharged nine years later. During his years in the service, he acquired thirty-four semester credits by attending night courses at the University of Mryland (Far Eastern Division, Tokyo), the University of Kansas, and Washburn University. His A's and B's at the University of Maryland show that he applied himsel diligently.[2] In addition, over the years, Meredith attended numerous college level courses offered by the Armed Forces Institute. Jackson Stae College allowed him fifty-seven quarter hours credit for the work he had taken at the Armed Forces Institute. After his discharge from the Air Forces in the summer of 1960, meredith returned to Mississippi and enrolled in Jackson State College, a Negro college in Jackson. Throughout his years of seeking to improve himself, he elected to study demanding and challenging subjects indicative of a determined effort to obtain a solid education. In the early part of 1961, Meredith applied for admission to the University of Mississippi. At that time he had about ninety credits. When asked on the witness stand why he wished to transfer from Jackson State College to the University of Mississippi he said that he regarded Jackson State as 'substandard'.
 
 
 3
 January 26, 1961, Meredith mailed formal applications for admission to the University of Mississippi. His letter of transmittal informed the registrar that he was a Negro; the forms required a statement of the applicant's race and also required him to attach a photograph. He furnished with his application five certificates from residents of Attala County, each certifying to his good moral character. Meredith's letter to the registrar stated: 'I will not be able to furnish you with the names (certificates) of six University Alumni (as required by University regulations for admission) because I am a negro and all graduates of the school are white. Further, I do not know any graduate personally.'
 
 
 4
 February 4, 1961, the registrar wired Meredith that it 'has been found necessary to discontinue consideration of all applications for admission or registration for the second semester which were received after January 25, 1961.' University officials stated that overcrowing at the University prompted its action.
 
 
 5
 February 20, 1961, Meredith wrote the registrar requesting that his application be considered 'a continuing application for admission during the summer session beginning June 8, 1961.' He asked that the registrar advise him whether his transcripts from other universities had been received and whether he had forwarded to the registrar all of the information necessary to make the application for admission complete. In answer, the registrar wrote him that since the University was 'unable to accept application for admission', the ten dollars for the room deposit was being returned.
 
 
 6
 February 23, 1961, Meredith wrote the registrar and again requested that he be considered for admission to the summer session. The registrar did not reply to this letter. March 18, Meredith wrote, requesting that his application 'be considered a continuing one for the Summer Session and the Fall Session, 1961'. Again he asked 'whether there remains any further prerequisites to admission'. Not having received a reply by March 26, he wrote the registrar calling attention to the statement in the Bulletin of the University of Mississippi, 1960 Catalog, that the registrar 'will provide each transfer student with an evaluation of the credits acceptable to the University', and asking that he be sent a copy of the evaluation of his credits. In the same letter he forwarded five amended certificates from the same Attala County residents who signed the original certificates, not only attesting to his good moral character, but specifically recommending his admission to the University.
 
 
 7
 Meredith received no answer from the registrar to any of these three letters. On April 12, 1961, he wrote the Dean of the College of Liberal Arts of the University of Mississippi. This letter requested the Dean 'to review the case with the registrar and to advise Meredith' which admission 'requirements, if any, (he) failed to meet, and to give (him) some assurance that (his) race and color are not the basis for (his) failure to gain admission to the University'. This letter produced a reply almost four weeks later. The registrar answered May 9, 1961, stating that the 'application had been received and will receive proper attention'. As for Meredith's credits, he stated that 'under the standards of the University of Mississippi the maximum credit which could be allowed is forth-eight semester hours' of the total of ninety according to the transcripts. Meredith wrote on May 15 and again on May 21, 1961 stating that he still wanted his application considered as pending.
 
 
 8
 May 25, 1961, the registrar closed his file on Meredith with the following letter:
 
 
 9
 'The University cannot recognize the transfer of credits from the institution which you are now attending since it is not a member of the Southern Association of Colleges and Secondary Schools. Our policy permits there transfer of credits only from member institutions of regional associations. Furthermore, students may not be accepted by the University from those institutions whose programs are not recognized.
 
 
 10
 'As I am sure you realize, your application does not meet other requirements for admission. Your letters of recommendation are not sufficient for either a resident or nonresident applicant. I see no need for mentioning any other deficiencies.'
 
 
 11
 May 31, 1961, Meredith filed a complaint in the United States District Court for the Southern District of Mississippi against the Board of Trustees of the State Institution of Higher Learning of the State of Mississippi, the Chancellor of the University of Mississippi, the Dean of the College of Liberal Arts, and the Registrar of the University. The Board of Trustees, apointed by the governor with the consent of the Mississippi senate, is vested, under the state constitution, with the management and control of all the state institutions of higher learning. The complaint in filed as a class action on behalf of Meredith and all other Negro students similarly situated.[3] It seeks to enjoin, at the University of Mississippi and other state institutions of higher learning, the practice of limiting admissions to white persons.
 
 
 12
 The particular phase of the litigation now before this Court is an appeal from an order of the district court denying Meredith's motion for a preliminary injunction enjoining the registrar at the University from denying appellant's admission solely on account of his race and color. The motion, which was filed with the complaint, asked for specific relief with regard to the summer term beginning June 8, 1961, but the pleadings and the hearings show that the plaintiff sought admission to the next available term, summer session or regulr session. The hearing on the motion was set for June 12, 1961, four days after commencement of the first summer term. About 3:30 p.m. on the afternoon of the hearing the district judge stopped the hearing and continued the case, on the ground that he had set aside only one day to hear the case, because of his crowded docket. The case was continued until July 10, 1961, at which time, according to the court, the entire case would be heard since, in the interim, the answer would have been filed. The case could not be heard on July 10, however, because it conflicted with the trial of a special three-judge court case.
 
 
 13
 Since it was apparent that the first summer term would be over before the case would be heard, the appellant filed another motion ourging the court to grant a preliminary injunction before commencement of the second term on July 17, 1961. The motion was fixed for hearing on July 11, 1961. On July 10, the chief counsel for the appellee, an assistant attorney general for the state, was ill. The case was therefore continued until August 10, 1961.
 
 
 14
 In the two months' interim between filing of the complaint and the hearing August 10 the plaintiff made five unsuccessful attempts to take the registrar's deposition. The first motion was denied on the ground that the deposition could not be taken before the expiration of twenty days from the filing of the complaint. The second was denied because of the assistant attorney general's ill health. The last three were denied on the grounds that the court was 'in the process of trial on plaintiff's motion for temporary injunction and in the exercise of (the) court's discretion'
 
 
 15
 The plaintiff moved for the production of records of all studens admitted to the February 8, 1961, term, the 1961 summer term, and the September 1961 term for inspection by the plaintiff's counsel. This motion, filed on June 20, was not heard until July 27, again because of the assistant attorney general's ill health. On August 1 the district judge entered an order allowing inspection of certain records, limiting the inspection, however, to applications for admission of 'regular undergraduate transfer students for enrollment in the 1961 summer session'.
 
 
 16
 The registrar filed his answer July 19, 1961, denying that any state law, policy, custom or usage limits admissions to the University of Mississippi to white persons and denying that Meredity had been refused admission solely because of race or color. The registrar averred that Meredith was denied admission because: (1) he had failed to submit the requisite alumni certificates; (2) he was not seeking admission in good faith; (3) under established rules of the Board of Trustees no institution is required to accept a transfer student unless the program of the transferring college is acceptable to the receiving institution and in this case the previous program of Jackson State College is not acceptable to the University because Jackson State College is not a member of the Southern Association of Colleges and Secondary Schools; and (4) for the reasons assigned in the registrar's letter of May 25, 1961 to Meredith.
 
 
 17
 On August 10, 1961, the hearing was resumed. August 11 it was continued until August 15 in order to allow the assistant attorney general to appear in another case. The hearing resumed August 15 and was concluded on August 16.
 
 
 18
 The district judge allowed the appellee until September 5, 1961, to file a brief and gave the appellant until September 21 in which to file a reply brief. The last summer session was over on August 18. The first semester of the 1961-62 school year began September 28, 1961.
 
 
 19
 The district judge rendered his decision December 12, 1961, denying the plaintiff's motion for a preliminary injunction. The court set the case for trial on the merits on January 15, 1962.
 
 
 20
 In its opinion, which the district court treated as 'findings of fact and conclusions of law', the court made these findings: (1) Meredith never presented the alumni certificates required for admission; (2) denial of Meredith's admission in February 1961 was based on overcrowding at the University; (3) on May 15, 1961, the Committee on Admissions decided, without any attempt to discriminate, to raise scholastic standards by accepting 'credits only from institutions which are members of a regional accrediting association or a recognized professional accrediting association'; (4) Jackson State College was not a member of the Southern Association of Colleges and Secondary Schools[4] and, therefore, many of Meredith's credits were not acceptable to the University. The district court ruled that 'the overwhelming weight of the testimony is that the plaintiff was not denied admission because of his color or race'.
 
 
 21
 The appellant filed his notice of appeal on December 14, the day the court below entered its formal order. December 18, appellant moved for an order advancing the date of the hearing of his appeal. This Court granted the motion and heard the appeal January 9, 1962.
 
 I.
 
 22
 This case was tried below and argued here in the eerie atmosphere of nevernever land. Counsel for appellees argue that there is no state policy of maintaining segregated institutions of higher learning and that the court can take no judicial notice of this plain fact known to everyone. The appellees' chief counsel insists, for example, that appellant's counsel should have examined the genealogical records of all the students and alumni of the University and should have offered these records in evidence in order to prove the University's alleged policy of restricting admissions to white students.
 
 
 23
 We take judicial notice that the state of Mississippi maintains a policy of segregation in its schools are colleges.[5] Cf. United States ex rel. Goldsby v. Harpole, 5 Cir., 1959, 263 F.2d 71, cert. denied, 361 U.S. 838, 80 S.Ct. 58, 4 L.Ed.2d 78.
 
 
 24
 The existence of this policy is an important factor in determining the purposes and effects of statutes and actions superficially innocuous. The existence of the policy and its effect as a guiding force, however, do not relieve the plaintiff of the necessity of showing in this case that the policy was applied to him to produce discrimination on the ground of race. James Meredith, like any applicant for admission to a university, may be denied admission on non-discriminatory grounds. grounds.
 
 II.
 
 25
 We hold that the University's requirement that each candidate for admission furnish alumni certificates is a denial of equal protection of the laws, in its application to Negro candidates. It is a heavy burden on qualified Negro students, because of their race. It is no burden on qualified white students.
 
 
 26
 The fact that there are no Negro alumni of the University of Mississippi, the manifest unlikelihood of there being morre than a handful of alumni, if any, who would recommend a Negro for the University, the traditional social barriers making it unlikely, if not impossible, for a Negro to approach alumni with a request for such a recommendation, the possibility of reprisals if alumni should recommend a Negro for admission, are barriers only to qualified Negro applicants. It is significant that the University of Mississippi adopted the requirement of alumni certificates a few months after Brown v. Board of Education was decided.
 
 
 27
 In Ludley v. Board of Supervisors Louisiana State University of E.D. La., 150 F.Supp. 900, aff'd 5 Cir., 252 F.2d 372 (1958, cert. denied, 358 U.S. 819, 79 S.Ct. 31, 3 L.Ed.2d 61 (1958), a somewhat similar requirement was invalidated. There, a statute required for admission to state universities a certificate of good moral character addressed to the particular university by the principal of the high school from which the applicant was graduated. Negro his schools were furnished certificates addressed only to negro colleges. This Court held that the purpose and effect of the statute was to discriminate against Negroes. More recently, in Hunt v. Arnold, N.D.Ga., 1959, 172 F.Supp. 847, 849 (not appealed), the court held that an alumni certificate requirement of the University of Georgia adopted in 1953, was unconstitutional. In that case the court said: 'The Court takes judicial notice of the fact that it is not customary for Negroes and whites to mix socially or to attend the same public or private educational institutions in the State of Georgia, and that by reason of this presently existing social pattern, the opportunities for the average Negro to become personally acquainted with the average white person, and particularly with the alumni of a white educational institution, are necessarily limited.'
 
 
 28
 To the extent, therefore, that the University of Mississippi relied on the requirement of alumni certificates and recommendations, Meredith was discriminated against in violation of the equal protection clause of the Fourteenth Amendment and was unlawfully denied admission to the University.
 
 III.
 
 29
 That holding does not dispose of the case. The state of the record is such that it is impossible to determine whether there were valid, non-discriminatory grounds for the University's refusing Meredith's admission. Considering the state of the record and considering that the trial on the merits, heretofore set for January 15, 1962, can be held at an early date, we feel that it would promote the proper disposition of the case if, in declining to reverse the denial of the preliminary injunction, we make the following observations for the guidance of the district judge presiding at the trial on the merits.
 
 
 30
 A. First, the transcript and the deposition taken in the presence of the trial judge show that the counsel for the defendants was allowed so much latitude while at the same time the counsel for the plaintiff was so severely circumscribed in the examination of witnesses, introduction of evidence, and argument that the record contains a welter of irrelevancies and, at the same time, a conspicuous omission of evidence that should be helpful to proper determination of the case.
 
 
 31
 B. The limitation of evidence to that pertaining to the summer session of 1961 is clearly erroneous. It is erroneous since the policy and practice of the University in admissions were at issue. It is erroneous because Meredith made it plain that his application for admission was intended as a continuing application to the regular term as well as to the summer term of the University.
 
 
 32
 C. In oral argument on appeal, counsel for both parties called to the attention of this Court that since the hearing below Jackson State College has been approved by the Southern Association of Colleges and Secondary Schools. This fact has a material bearing on the issue.
 
 
 33
 D. It is not clear from the record whether the University gave any effect to Meredith's credits from the Universities of Maryland, Kansas, and Washburn, and the twelve acceptable credits from Jackson State College, although a letter of the Registrar seems to accept forty-eight credits.
 
 
 34
 E. It is not clear from the record whether the University's references to Jackson State College mean that Meredith was rejected simply because he had attended that college or he was rejected because the University would not accept all of Jackson State College's credits. (Apparently, although this too is unclear, the University accepted twelve credits Meredith submitted from Jackson State.)
 
 
 35
 A full trial on the merits is needed in order to clarify the muddy record now before us. Within proper legal bounds, the plaintiff should be afforded a fair, unfettered, and unharassed opportunity to prove his case. A man should be able to find an education by taking the broad highway. He should not have to take by-roads through the woods and follow winding trails through sharp thickets, in constant tension because of pitfalls and traps, and, after years of effort, perhaps attain the threshold of his goal when he is past caring about it.
 
 
 36
 Accordingly, the order of the district court denying appellant's motion for a preliminary injunction is affirmed. The motion of the appellant that this Court order the district court to enter a preliminary injunction in time to secure the appellant's admission to the February 6 term is denied. It is suggested that the district judge proceed promptly with a full trial on the merits and that judgment be rendered promptly, especially in view of the fact that a new term of the University of Mississippi begins February 6, 1962. The Court's mandate will be issued forthwith.
 
 On Petition For Rehearing
 
 37
 PER CURIAM.
 
 
 38
 The petition for rehearing of the appeal from the judgment denying a preliminary injunction is herewith dismissed as moot.
 
 
 
 [1]
 The state-supported colleges in South Carolina and Alabama are also uniracial. The University of Alabama, however, is under order to admit negroes. Lucy v. Adams, N.D.Ala., 1955, 134 F.Supp. 235, affirmed 5 Cir., 228 F.2d 619, cert. denied, 351 U.S. 931, 76 S.Ct. 790, 100 L.Ed. 1460; 350 U.S. 1, 76 S.Ct. 33, 100 L.Ed. 3 (1955)
 
 
 [2]
 In the 1958-59 term Meredith was given the grade of B in each of five subjects. In the 1959-60 term he received 3 A's, 4 B's, and 1 F
 
 
 [3]
 The complaint invokes the jurisdiction of the court and 28 U.S.C.A. 1343(3), alleging deprivation of rights in violation of (1) the due process and equal protection clauses of the Fourteenth Amendment and (2) 42 U.S.C.A. 1983
 
 
 [4]
 The University regulation adopted May 15, 1961 provides that the University will 'accept credits only from institutions which are members of a regional accrediting association or a recognized professional accrediting association'
 Jackson State College is accredited by the Mississippi College Accrediting Commission and the Council on Study and Accreditation of Institutions of Higher Learning. The College Accrediting Commission is a statutory body (Miss.Code 1942, 6791.5). The registrar testified that he knew of his own knowledge that Jackson State College was accredited by that Commission.
 
 
 [5]
 Mississippi's strong policy in favor of segregation is reflected in its statues. Mississippi, in addition to enacting a resolution of interposition, enacted a statute requiring all members of the executive branch of the state government to prevent implementation of Brown v. Board of Education, 349 U.S. 294, 75 S.Ct. 753, 99 L.Ed. 1083 and enforce segregation in the public schools and other public facilities 'by any lawful, peaceful and constitutional means' (Miss.Code 1942, 4065.3). There is no statute limiting admissions to the University of Mississippi but Mississippi State College is limited to white males (Miss.Code 1942, 6694); Alcorn Agricultural and Mechanical College was established in 1878 for the education of the colored youth (Miss.Code 1942, 6703); Mississippi State College for Women is also limited to white students (Miss.Code 1942, 6711 and 6714); Jackson State College for Negro Teachers, now known as Jackson State College, is the institution of higher learning which appellant now attends (Miss. Code 1942, 6808-01, 6809). The Board of Trustees has statutory authority to provide graduate and professional instruction for Negro youth outside the State 'when such instruction is not available for them in the regularly supported Mississippi institutions of higher learning' (Miss.Code 1942, 6726.5). Moreover, in 1959 the State Sovereignty Commission of Mississippi issued a report on the state's Negro and white schools, teachers and colleges. This report states the following:
 The 1958-1959 allocation of state appropriated funds for Senior Colleges broken down on the basis of the amount allocated per student, is as follows:
 
 
 [1]
 Alcorn A. & M. College
 --(Negro) ................... $747.65
2. Mississippi Vocational
 --(Negro) .................... 725.09
3. University of Mississippi
 --(white) .................... 675.69
4. Delta State College--
 (white) ...................... 652.54
5. Miss. State College for
 Women--(white) ............... 552.53
6. Jackson State College
 --(Negro) .................... 476.47
7. Mississippi State University
 --(white) .................... 454.67
8. Mississippi Southern
 College--(white) ............. 387.10
 
 
 [4]
 Race Relations Law Reporter 467 (1959). There is a state constitutional provision and several state statutes requiring segregation in the public schools. E.g., Miss. Constitution 1956, Art. 8, 207; Miss.Code 1942, 6220.5, 6328-03