**Samuel BAILEY et al., Appellants,**

v.

**Joe T. PATTERSON, Attorney General of the State of Mississippi, et al., Appellees.**

**No. 20372.**

United States Court of Appeals
Fifth Circuit.

Sept. 24, 1963.

Rehearing Denied Nov. 8, 1963.

---

Cameron, Circuit Judge, dissented. See also D.C., 206 F.Supp. 67.

———◆———

Derrick A. Bell, Jr., Jack Greenberg, Constance Baker Motley, New York City, R. Jess Brown, Vicksburg, Miss., for appellants.

Elizabeth W. Grayson, Jackson, Miss., Wence F. Cerne, Atty. (I. C. C. RR.), Chicago, Ill., Thomas H. Watkins, Joe T. Patterson, Atty. Gen. of Miss., John M. Kuykendall, Jr., Jackson, Miss., for appellee Illinois Central R. Co. Joseph H. Wright, Chicago, Ill., of counsel.

Junior O'Mara, Robert C. Cannada, Jackson, Miss., for appellees, Greyhound Corp. and Continental Southern Lines, Inc., Butler, Snow, O'Mara, Stevens & Cannada, Jackson, Miss., of counsel.

E. W. Stennett, City Atty., Jackson, Miss., for the City of Jackson and others.

Before CAMERON, WISDOM and HAYS,* Circuit Judges.

HAYS, Circuit Judge.

Plaintiffs, Negroes living in Jackson, Mississippi, appeal from judgments of the United States District Court for the Southern District of Mississippi, S. C. Mize, Judge, which declared unconstitutional both the so-called Segregation Statutes of the State of Mississippi,[1] and a similar ordinance of the City of Jackson,

---

\* Of the Second Circuit, sitting by designation.

1. Miss.Code Ann. tit. 11, §§ 2351, 2351.5, 2351.7, and tit. 28, §§ 7784, 7785, 7786, 7786–01, 7787, 7787.5 (1942).

and declared that each of the plaintiffs had a right to unsegregated transportation service from each of the carrier defendants,[2] but denied to appellants injunctive or class relief against any of the defendants. We hold that appellants are entitled to injunctive relief and reverse the judgments, *pro tanto*.

Jurisdiction was invoked under the Civil Rights Act, 28 U.S.C. § 1343, and 42 U.S.C. § 1983. Plaintiffs alleged that defendants, acting under color of state law, policy, and custom, denied to plaintiffs and the class of all others similarly situated, their right to transportation service free from racial discrimination. They based their claim on the Fourteenth Amendment and the Commerce Clause of the Constitution of the United States, and on the Interstate Commerce Act, 49 U.S.C. §§ 3(1), 316(d). Plaintiffs sought to enjoin the enforcement of state and municipal segregation laws affecting common carriers, and to enjoin all defendants from maintaining racial segregation in any manner, by the use of signs or otherwise, on the carriers[3] or in or around their terminals or other facilities anywhere in the state. Plaintiffs also sought to enjoin the municipal authorities from continuing to arrest, harass, intimidate, threaten or coerce plaintiffs or members of their class in the exercise of their federally protected rights.

A three judge court, convened pursuant to 28 U.S.C. § 2281, invoked the doctrine of equitable abstention "to give the State Courts of Mississippi a reasonable opportunity to act." 199 F.Supp. 595, 603 (S.D.Miss.1961) (Rives, C. J., dissenting). On a direct appeal, the Supreme Court vacated the judgment, and remanded the case to the district court "for expeditious disposition * * * of

appellants' claims of right to unsegregated transportation service." 369 U.S. 31, 34, 82 S.Ct. 549, 551, 7 L.Ed.2d 512 (1962). The Supreme Court held that the abstention doctrine was inapplicable, and that there was no justification for convening a three judge court.

> "We have settled beyond question that no State may require racial segregation of interstate or intrastate transportation facilities. Morgan v. [Com. of] Virginia, 328 U.S. 373 [66 S.Ct. 1050, 90 L.Ed. 1317]; Gayle v. Browder, 352 U.S. 903 [77 S.Ct. 145, 1 L.Ed.2d 114]; Boynton v. [Com. of] Virginia, 364 U.S. 454, [81 S.Ct. 182, 5 L.Ed.2d 206]. The question is no longer open; it is foreclosed as a litigable issue. Section 2281 does not require a three-judge court when the claim that a statute is unconstitutional is wholly insubstantial, legally speaking non-existent. * * * We hold that three judges are similarly not required when, as here, prior decisions make frivolous any claim that a state statute on its face is not unconstitutional." 369 U.S. at 33, 82 S.Ct. at 550–551, 7 L.Ed.2d 512.

The Court also disposed of the argument that plaintiffs lacked standing to bring the action.

> "[A]s passengers using the segregated transportation facilities they are aggrieved parties and have standing to enforce their rights to nonsegregated treatment. Mitchell v. United States, 313 U.S. 80, 93 [61 S.Ct. 873, 85 L.Ed. 1201]; Evers v. Dwyer, 358 U.S. 202 [79 S.Ct. 178, 3 L.Ed.2d 222]." 369 U.S. at 33,[4] 82 S.Ct. at 550–551, 7 L.Ed.2d 512.

---

2. The defendants-appellees, Jackson City Lines, Inc., Jackson Municipal Airport Authority, Continental Southern Lines, Inc. (Trailways), Southern Greyhound Lines, and Illinois Central Railroad, Inc. are referred to hereafter as the carrier defendants or carrier appellees. The latter four are referred to as the interstate carriers. Jackson City Lines, Inc., Continental Southern Lines, Inc. and South-

ern Greyhound Lines are referred to as bus company defendants or bus company appellees.

3. While the complaint does not allege that seating on the trains of the Illinois Central Railroad is segregated, this exception does not extend to its depots.

4. Plaintiffs had also sought to enjoin certain criminal prosecutions under Missis-

Upon the remand, the district court, on the original record before the three judge court, entered judgment declaring the statutes and ordinance unconstitutional, and stating that "each of the three plaintiffs has a right to unsegregated transportation service from each of the carrier defendants." It ruled, however, that the action was "not a proper class action, and no relief may be granted other than that to which the plaintiffs are personally entitled." The district court found that the segregation statutes were no longer enforced, that the record disclosed only "isolated instances" of improper behavior by law enforcement officials, that segregation signs had been removed from the premises of the carrier defendants, and that all terminal facilities of the carriers were now being fully used by members of all races. It therefore denied injunctive relief, but retained jurisdiction for the entry of further orders as might subsequently appear appropriate.

Appellants promptly moved to amend the findings, and for further relief on the basis of affidavits showing continuing segregation. A hearing was held, and the court found that signs referring to race had remained posted, and that certain other discrimination had continued after the initial order, but that the situation had now been corrected. Injunctive and class relief was again denied.

Upon a subsequent motion again alleging continued segregation, injunctive relief was denied for a third time.[5]

Plaintiffs appeal from all three orders, insofar as they (a) refused to grant injunctive relief, (b) refused to recognize the class nature of the action, and (c) refused to enjoin the City of Jackson from maintaining racial signs on the sidewalks outside the waiting rooms at the terminals of the carrier defendants. These signs had been ignored in the findings and orders of the district court.

Our decision in United States v. City of Jackson, 5 Cir., 318 F.2d 1, after the notice of appeal herein was filed, renders moot the third of the three bases of the appeal. We ordered that an injunction should issue against the City of Jackson, its Commissioners, and its Chief of Police directing the removal of these same signs and any others indicating or suggesting that any of the terminal facilities are for the use of persons of any particular race or color. We further directed that the defendants be enjoined from "otherwise seeking to enforce or encourage racial segregation in the use of terminal facilities of the carriers."

Only the first two bases for the appeal herein remain for our consideration.

■■ We find it unnecessary to set forth the evidence in detail. Suffice it to say that appellants, all Negro residents of Jackson, Mississippi, have experienced racial segregation in using the facilities of each of the carrier appellees. Separate wating rooms, drinking fountains, rest rooms and other terminal facilities were maintained by the carrier appellees, and signs directed to race were posted in the terminals of the interstate carrier defendants, and on the buses of the Jackson City Lines. The latter signs directed Negroes to the rear of the bus. Negro witnesses, other than appellants, testified to instances in which they had been ordered by drivers of each of the bus company appellees to sit in the rear of the bus, and in which police had been called and the witnesses arrested upon their refusal

---

sippi's breach of peace statutes. The Supreme Court held that since plaintiffs did not allege that they had been prosecuted or threatened with prosecution under these statutes, they lacked standing to sue. 369 U.S. at 32, 82 S.Ct. at 550, 7 L.Ed.2d 512.

5. The moving papers alleged that Negroes were still being discriminated against in the restaurant at the Jackson Municipal Airport. The court found that the manager of the restaurant, the defendant, Cicero Carr, had continued to discriminate against Negroes in the restaurant, but that his lease had terminated and he would no longer have any interest in or control over the restaurant facilities. It ordered that Carr should not be employed by those facilities in the future, but denied further relief.

to comply. Appellants introduced in evidence approximately 190 judgments of conviction for breach of the peace entered against persons arrested in waiting rooms of the interstate carrier appellees in Jackson at the time of the so-called Freedom Ride demonstrations in the summer of 1961. Appellants themselves have neither been arrested nor threatened with arrest for refusal to comply with the segregation laws or policies of the appellees. They were, however, users of appellees' segregated facilities and thus acquired standing to sue. Bailey v. Patterson, supra, 369 U.S. at 33, 82 S.Ct. at 550–551, 7 L.Ed.2d 512. The law is crystal clear that they were not required to subject themselves to arrest in order to maintain this suit. Evers v. Dwyer, 358 U.S. 202, 79 S.Ct. 178, 3 L.Ed.2d 222 (1958); Morrison v. Davis, 252 F.2d 102 (5th Cir.), cert. denied, 356 U.S. 968, 78 S.Ct. 1008, 2 L.Ed.2d 1075 (1958); Baldwin v. Morgan, 251 F.2d 780, 787 (5th Cir., 1958).

Even after the entry of judgment in the present case, separate facilities for white and Negro passengers continued to be maintained by all carrier defendants, and racial signs remained posted. The lessees of restaurants at the Jackson Municipal Airport and at a Continental (Trailways) bus terminal in Meridian, Mississippi, continued to refuse unsegregated service to Negroes.

## I.

Appellees insist that these practices have now ceased, that all racial signs in and around the facilities of the carrier defendants have now been removed, and that state and municipal segregation laws are no longer enforced. Even assuming this to be so, appellants are entitled to injunctive relief. Notwithstanding the clear pronouncements of the Supreme Court in the present case, 369 U.S. 31, 82 S.Ct. 549, 7 L.Ed.2d 512, and in Boynton v. Com. of Virginia, 364 U.S. 454, 81 S.Ct. 182, 5 L.Ed.2d 206 (1960); Gayle v. Browder, 352 U.S. 903, 77 S.Ct. 145, 1 L.Ed.2d 114 (1956); and Morgan v. Com. of Virginia, 328 U.S. 373, 66

S.Ct. 1050, 90 L.Ed. 1317 (1946); of this Court in Boman v. Birmingham Transit Co., 280 F.2d 531 (5th Cir., 1960); Morrison v. Davis, supra; and Baldwin v. Morgan, supra; of the district courts in United States v. City of Montgomery, 201 F.Supp. 590 (M.D.Ala.1962); Brooks v. City of Tallahassee, 202 F.Supp. 56 (N.D.Fla.1961); and Lewis v. Greyhound Corp., 199 F.Supp. 210 (M.D.Ala.1961); and of the Interstate Commerce Commission in N.A.A.C.P. v. St. Louis S. F. Ry., 297 I.C.C. 335 (1955), to name but some of the pertinent cases, appellees continued to maintain their policies and practices of racial segregation. The record here shows that these policies and practices were continued even *after* the entry of judgment by the district court in the present case. The recent statement of this court in United States v. City of Jackson, supra, is pertinent:

> "We again take judicial notice that the State of Mississippi has a steelhard, inflexible, undeviating official policy of segregation. The policy is stated in its laws. It is rooted in custom. The segregation signs at the terminals in Jackson carry out that policy. The Jackson police add muscle, bone, and sinew to the signs."

318 F.2d at 5–6 (footnotes omitted). See also Meredith v. Fair, 298 F.2d 696, 701 (5th Cir.), cert. denied, 371 U.S. 828, 83 S.Ct. 49, 9 L.Ed.2d 66 (1962).

■■ Under these circumstances, the threat of continued or resumed violations of appellant's federally protected rights remains actual. Denial of injunctive relief might leave the appellees "free to return to [their] old ways." United States v. W. T. Grant Co., 345 U.S. 629, 632, 73 S.Ct. 894, 897, 97 L.Ed. 1303 (1953). "It is the duty of the courts to beware of efforts to defeat injunctive relief by protestations of repentance and reform, especially when abandonment seems timed to anticipate suit, and there is probability of resumption." United States v. Oregon State Medical Soc'y, 343 U.S. 326, 333, 72 S.Ct. 690, 695–696, 96 L.Ed. 978

(1952). In the Grant case, supra, the Court said:

"Along with its power to hear the case, the court's power to grant injunctive relief survives discontinuance of the illegal conduct. Hecht Co. v. Bowles, supra [321 U.S. 321, 64 S.Ct. 587, 88 L.Ed. 754]; Goshen Mfg. Co. v. [Hubert A.] Myers Mfg. Co., 242 U.S. 202 [37 S.Ct. 105, 61 L.Ed. 248] (1916). The purpose of an injunction is to prevent future violations, Swift & Co. v. United States, 276 U.S. 311, 326 [48 S.Ct. 311, 72 L.Ed. 587] (1928), and, of course, it can be utilized even without a showing of past wrongs. But the moving party must satisfy the court that relief is needed. The necessary determination is that there exists some cognizable danger of recurrent violation * * *."

345 U.S. at 633, 73 S.Ct. at 897–898, 97 L.Ed. 1303. On the present record, it is clear that such danger exists. Cf. Derrington v. Plummer, 240 F.2d 922, 925 (5th Cir., 1956) and cases cited, cert. denied, sub nom. Casey v. Plummer, 353 U.S. 924, 77 S.Ct. 680, 1 L.Ed.2d 719 (1957).

## II.

The decisions of this court are divided on the question of whether appellants have standing to represent not only themselves but the class of all Negroes similarly situated. Fed.R. Civ.P. 23(a). Compare Shuttlesworth v. Gaylord, 202 F.Supp. 59, 62 (N.D.Ala.1961), aff'd sub nom. Hanes v. Shuttlesworth, 310 F.2d 303 (5th Cir., 1962), and Derrington v. Plummer, 240 F.2d 922 (5th Cir., 1956), cert. denied, sub nom. Casey v. Plummer, 353 U.S. 924, 77 S.Ct. 680, 1 L.Ed.2d 719 (1957), with Clark v. Thompson, 313 F.2d 637 (5th Cir., 1963). The remand by the Supreme Court in the present case would seem to indicate an affirmative answer. The Court specifically noted that this is a class action (369 U.S. at 32, 82 S.Ct. at 550, 7 L.Ed.2d 512). While it distinguished and denied appellants' attempt to enjoin certain criminal prosecutions against members of a class of which appellants are not members (id. 369 U.S. at 33–36, 82 S.Ct. at 550–551, 7 L.Ed.2d 512) [6], it cited Evers v. Dwyer, 358 U.S. 202, 79 S.Ct. 178, 3 L.Ed.2d 222 (1958), also a class action, in remanding the present claims for expeditious disposition. See also Turner v. City of Memphis, 369 U.S. 350, 82 S.Ct. 805, 7 L.Ed.2d 762 (1962).

We find it unnecessary to determine, however, whether this action was properly brought under Rule 23(a), for whether or not appellants may properly represent all Negroes similarly situated, the decree to which they are entitled is the same. Appellants do not seek the right to use those parts of segregated facilities that have been set aside for use by "whites only." They seek the right to use facilities which have been *desegregated*, that is, which are open to all persons, appellants and others, without regard to race. The very nature of the rights appellants seek to vindicate requires that the decree run to the benefit not only of appellants but also for all persons similarly situated.

In Potts v. Flax, 313 F.2d 284, 289–290 (5th Cir., 1963), a school segregation case, this Court said:

"There is at least considerable doubt that relief confined to individual specified Negro children either could be granted or, if granted, could be so limited in its operative effect. By the very nature of the controversy, the attack is on the unconstitutional practice of racial discrimination. Once that is found to exist, the Court must order that it be discontinued. Such a decree, of course, might name the successful plaintiff as the party not to be discriminated against. But that decree may not —either expressly or impliedly—affirmatively authorize continued discrimination by reason of race against others. Cf. Shelley **v.** Kraemer,

6. See note 4, supra.

1948, 334 U.S. 1, 68 S.Ct. 836, 92 L.Ed. 1161. Moreover, to require a school system to admit the specific successful plaintiff Negro child while others, having no such protection, were required to attend schools in a racially segregated system, would be for the court to contribute actively to the *class* discrimination proscribed by Bush v. Orleans Parish School Board, 5 Cir., 1962, 308 F.2d 491, 499, on rehearing 308 F.2d 503; see also Ross v. Dyer, 5 Cir., 1962, 312 F.2d 191. The effect of this last consideration is to afford additional basis for affirmance. In this light, if it was an error to treat the case as a class suit and enter such a decree, such error, if any, was harmless since the decree for all practical purposes would have been the same had it been confined to the Teal or Flax children." [7]

These principles are fully applicable here.[8]

## III.

There remains to be considered which defendants shall be enjoined.

■ To justify the issuance of an injunction against the Attorney General, appellants refer to Patterson's testimony herein that "if conditions arise to such a point that I thought it was necessary to bring them into effect," he would enforce the Mississippi segregation laws. Those laws have now been declared unconstitutional, however, and we cannot assume that the highest legal officer of the state would nevertheless seek their enforcement. Under these circumstances, we cannot say that the denial of injunctive relief against the Attorney General constituted an abuse of discretion. Cf. Poe v. Ullman, 367 U.S. 497, 81 S.Ct. 1752, 6 L.Ed.2d 989 (1961); Com. of Massachusetts v. Mellon, 262 U.S. 447, 488, 43 S.Ct. 597, 67 L.Ed. 1078 (1923).

As indicated above, we directed in United States v. City of Jackson, 318 F.2d 1 (5th Cir., 1963) that an injunction issue against the City, its Commissioners, and its Chief of Police, all of whom are appellees herein, enjoining the maintenance of racial signs or "otherwise seeking to enforce or encourage racial segregation in the use of the terminal facilities of the carriers." Although the injunction has not yet issued, we assume that persons using the carrier appellees' *terminals* in the exercise of their federal rights will, by its terms, be protected against arrest, harassment, intimidation, threats, or coercion by the City, or its police or other officials. To that extent, the injunction prayed for is unnecessary. The mandate in United States v. City of Jackson, supra, does not relate, however, to persons using the facilities of the Jackson Municipal Airport Authority, or the buses of the bus company appellees. To this extent, we direct that the injunction against the City and appellees Thompson, Lucky, Marshall and Rayfield issue as prayed for.

An injunction shall issue as prayed for against all carrier appellees.[9]

---

7. In a footnote to its opinion, id. 313 F.2d at 289, n. 5 the Court said:
   "[A]s we have recently pointed out, a school segregation suit presents more than a claim of invidious discrimination to individuals by reason of a universal policy of segregation. It involves a discrimination against a *class* as a class, and this is assuredly appropriate for class relief. Bush v. Orleans Parish School Board, 5 Cir., 1962, 308 F.2d 491, 499, modified on rehearing, 308 F. 2d 503. See also Ross v. Dyer, 5 Cir., 1962, 312 F.2d 191."

8. The cases relied on by the appellees, McCabe v. Atchison, T. & S. F. R. Co., 235 U.S. 151, 35 S.Ct. 69, 59 L.Ed. 169 (1914); Brown v. Board of Trustees, 187 F.2d 20 (5th Cir., 1951); and see note 4 supra, which denied class relief where plaintiffs were not members of the class for which relief was sought, are obviously beside the point.

9. At the appellate argument, appellants suggested that in addition to the relief prayed for, the decree should require that the waiting rooms formerly set aside for Negroes be closed. Alternatively, it may be appropriate to require appellees to post public signs to the effect that all facilities are now available to all passengers without regard to race. On the present record, however, we can express no opinion on the need for such relief. The

As against Cicero Carr,[10] it appears that further injunctive relief is unnecessary, and the order of August 24, 1962, is affirmed.

Affirmed in part, reversed and remanded in part for the entry of judgment in accordance with this opinion.

CAMERON, Circuit Judge (dissenting).

With deference, I dissent from the majority opinion filed in this case.

## I.

I would suggest at the outset that the majority is too much influenced by the decision of this Court in United States of America and Interstate Commerce Commission v. The City of Jackson and its Officers, 5 Cir., May 13, 1963, 318 F.2d 1. The specially concurring opinions of Judges Bootle and Ainsworth, in 320 F.2d 870, 5 Cir., July 18, 1963, tend to limit the broad sweep of the original opinion. For example, in the opinion of Judge Bootle upon rehearing, concurring in the result, it is stated:

"Upon a more careful study of the opinion in connection with the motion for rehearing, and in view of the opinion's extensive comment and broad treatment I have decided to restrict the scope of my concurrence * * *" Page 871 of 320 F.2d 1.

A good portion of the majority opinion in United States v. Jackson, supra, and particularly the "extensive comment and broad treatment" were devoted to dealing with constitutional questions arising under the Fourteenth Amendment and the Commerce Clause. As I understand these opinions, Judges Bootle and Ainsworth

have withdrawn their concurrences in the portions of the majority opinion which rested upon constitutional grounds. This would, I assume, eliminate from the opinion in that case some parts which are quoted or relied upon by the majority in the instant case.

In my opinion, the case of Clark et al. v. Thompson, Mayor et al., U.S.D.C. Southern District of Miss., May 15, 1962, 206 F.Supp. 539,[1] is more nearly in point in our solution of the questions discussed in the majority opinion in the case now before us. Here, of course, the court below did enter a declaratory judgment establishing the rights of the parties, merely withholding injunctive relief and retaining jurisdiction for the granting thereof, if it should subsequently turn out to be necessary. What Judge Mize wrote in Clark v. Thompson, now approved by us by our affirmance of the case and citing the opinion in it as authority, constitutes an excellent statement of the traditional view of the courts towards granting or denial of injunctions and, I think, gives us a good blueprint for action here:

"This is not a proper class action, and no relief may be granted other than that to which the plaintiffs are personally entitled. Whether this is a proper class action involves a question of fact. * * * The plaintiffs cannot make this a legitimate class action by merely calling it such. * * * The burden of proof on this issue was on the plaintiffs. * * * The plaintiffs failed to meet this burden. A class action cannot be maintained where the interests of the plaintiffs are antagonistic to and

---

question is properly addressed to the sound discretion of the district court.

10. See note 5 supra.

1. Affirmed in a per curiam opinion by this Court March 6, 1963, where this Court sub nom. Clark et al. v. Thompson, Mayor et al., 5 Cir., 313 F.2d 637, said:

"In this case the appellants complain of the judgment of the trial court refusing to grant an injunction and denying relief sought by way of declaratory judgment in an alleged class action

in which it was claimed that they and others similarly situated were denied the use of public recreational facilities in the City of Jackson, Mississippi, solely upon the grounds of race and color. Upon a careful review of the record, we find ourselves in agreement with the conclusions reached by the trial court. Brown v. Board of Trustees of LaGrange Ind. Sch. Dist., 5 Cir., 1951, 187 F.2d 20; Clark et al. v. Thompson et al., D.C., 206 F.Supp. 539."

not wholly compatible with the interests of those whom they purport to represent. * * *" 206 F.Supp. 542.

We omitted from the foregoing quotation the authorities cited. One of them, Troup v. McCart, 5 Cir., 238 F.2d 289, expresses accurately the attitude of this Court in such matters, and clearly supports Judge Mize's findings.

We quote further (206 F.Supp. pages 542–543):

"Voluntary segregation does not violate the Constitution of the United States which does not prohibit a municipality from permitting, authorizing or encouraging voluntary segregation. * * * [Citing a half column of cases.]

"A desire for a sweeping injunction cannot relieve plaintiffs of the obligation to comply with the general rule that they must present facts sufficient to show that their individual needs require injunctive relief. * * *

"The Supreme Court of the United States, in the case of Bailey et al. v. Patterson et al., 369 U.S. 31, 82 S.Ct. 549, 7 L.Ed.2d 512, held that the issuance of an injunction was an extraordinary and unusual writ. This, of course, does not announce any new law. The granting of an injunction is discretionary and dependent upon the facts of each case. It should be granted with great caution, care and deliberation on the part of the trier of the facts, and the power to issue injunctions should not be lightly indulged in, but exercised sparingly, after thoughtful deliberation and the presence of an urgent necessity. See 28 American Jurisprudence, Injunctions, Section 25, p. 515. Quoting briefly from that authority, it lays down the rule as follows:

"'The relief should be awarded only in clear cases, reasonably free from doubt, and when necessary to prevent great and irreparable injury.' * * *

"The individual defendants in this case are all outstanding, high class gentlemen and in my opinion will not violate the terms of the declaratory judgment issued herein. They know now what the law is and what their obligations are, and I am definitely of the opinion that they will conform to the ruling of this Court without being coerced so to do by an injunction. The City of Jackson, a municipality, of course is operated by some of these high class citizens. I am further of the opinion that during this period of turmoil the time now has arrived when the judiciary should not issue injunctions perfunctorily, but should place trust in men of high character that they will obey the mandate of the Court without an injunction hanging over their heads.

"Neither the facts in the present case nor the exigencies of the situation are sufficient or urgent enough to require the granting of an injunction. * * *"

## II.

In the action taken by Judge Mize in the Clark case and in the language he used, the highest traditions of equity were, in my opinion, exemplified. Obedience of the law and of the will of the Court were accomplished without needless harassment, without classifying the defendants as persons who would not obey the law unless forced to do so. A judge in a criminal case exercises the same wise discretion when, the facts justifying, he defers sentence upon one charged with having transgressed the law.

We have a like situation before us here. There are no citizens anywhere, including the individuals and the corporations, of greater integrity or dependability. The Judge who tried this case labored over it a long time and on many different occasions. After he had made his findings of fact and conclusions of law, he permitted the appellants to reopen the case as many times as they desired to raise questions

of law and to supplement the facts by affidavit or other means of proof. He modified his findings and conclusions on more than one occasion. These supplementary proceedings occupy one whole volume of the record. Counsel were given full opportunity to differentiate and discuss all of the recent holdings of the Supreme Court.

As an illustration, one party argued that the language of the Supreme Court in its decision of this (Bailey v. Patterson) case, quoted from by the majority opinion, indicated inferentially the attitude of the Supreme Court as favoring what the majority has now decided. The other party was heard to take the attitude illustrated by this quotation from the supplemental hearings:

"In this case, the Court [Supreme] said this: ' * * * remand the case for expeditious disposition in the light of this opinion, of appellant's claims of rights to unsegregated transportation service.' Compare that with the language of the remand in the Turner v. [City of] Memphis case. There the Supreme Court said 'The case is remanded to the District Court with directions to enter a decree granting appropriate injunctive relief against the discrimination complained of.'"

The trial court manifestly thought, from everything that transpired in court, from the demeanor of counsel and of the parties, that the appellees were merely urging upon it legitimate contentions as to the law and the fact; and, after all of the voluminous arguments, it entered this decree:

"IT IS ORDERED, ADJUDGED AND DECLARED as follows, to-wit:

"(a) That each of the three plaintiffs has a right to unsegregated service from the restaurant at the airport.

"(b) That defendant, Cicero Carr, should not have any interest in or control over the restaurant facilities and the Jackson Airport in the future and should not be employed in

any capacity in the operation of said facilities.

"(c) That the plaintiffs are not now entitled to any injunctive relief, but jurisdiction over this action and each of the defendants is hereby retained for the entry of such further orders and relief as may be subsequently appropriate. * * *"

The trial court entered this order after finding categorically and in detail that everything complained of by the appellants had been corrected and that "there will be no re-occurrence of same," that the parties had been fully advised what the law required of them and that an injunction was unnecessary.

### III.

This action of the court below comes to us, I submit, with an unusual presumption of correctness and an unusual call upon us to sustain the trial court's findings, conclusions and orders. Certainly the appellees had a right to contest all of the claims made by the appellants and to present their views fully and with all proper vigor. The appellants won their case and the appellees were taxed with costs in the court below. Their rights have been declared. The choice of means by which the court's will should be enforced belonged, under our system, in the trial judge. He it is who knows local conditions and who must live with and enforce the law as he has declared it.

Something is said in the majority opinion about our knowing certain things judicially. Certainly we do not know them as well as does the judge below who has spent all of his days in the State of Mississippi and in close contact with the problems presented in this case. Should compliance with the law as it has been declared be enforced by the methods chosen by the District Courts or by more drastic methods which we might have invoked if we had been sitting in his place? For my part, I think the answer to that is clear. I would support the judge in the field who knows the facts and knows best how obedience to the law and the mandate of the court can be accomplished. I think the law requires us, under the

facts of this case, to support and affirm the action of the lower court.

Judge Gewin has stated much better than I can, the attitude I think we, as an appellate court, should take in this case. The problems before the Court were much like those facing us here; and I adopt what he said in his dissenting opinion in W. G. Anderson et al. v. City of Albany et al., 5 Cir., 1963, 321 F.2d 649.

I respectfully dissent.