**UNITED STATES**

v.

**Ricky G. PICKERING, 442 62 1842, Airman Apprentice (E–2), U. S. Navy.**

**NCM 78 1788.**

U. S. Navy Court of Military Review.

Sentence Adjudged 29 Aug. 1978.

Decided 20 Dec. 1979.

CDR S. Gaeta, Jr., JAGC, USN, Appellate Defense Counsel.

CAPT John P. Hertel, USMC, Appellate Government Counsel.

LT William C. Martucci, JAGC, USNR, Appellate Government Counsel.

Before CEDARBURG, C. J., and EDWARDS and DONOVAN, JJ.

EDWARDS, Judge:

Appellant was tried by military judge on seven specifications of unauthorized absence in violation of Article 86, 10 U.S.C. § 889, Uniform Code of Military Justice (UCMJ), and two specifications in violation of Article 91, 10 U.S.C. § 891, UCMJ. On his provident plea of guilty, appellant was found guilty of six specifications of unauthorized absence, after which the Government withdrew the remaining specification in violation of Article 86, UCMJ, and the two specifications in violation of Article 91, UCMJ. He was sentenced to 3 months confinement at hard labor, reduction to pay grade E–1, and a bad-conduct discharge. The convening authority approved the sentence and the supervisory authority approved the sentence as approved by the convening authority.

Appellant has assigned as error the following:

### APPELLANT WAS DEPRIVED OF A FAIR AND IMPARTIAL HEARING ON SENTENCE.

Appellant contends that he was not afforded a fair hearing as to the quantum of punishment and argues that, through their ignorance and bias, the trial counsel's and the military judge's conduct and expression were the "inevitable product of systemic and institutional racism. . . ." In support of this contention appellant invited this Court's attention to the unsworn statement of the accused, the argument of trial counsel on sentence, and the remarks of the military judge made to the accused after imposing sentence.

We have examined the record of trial, the assignment of error and the Government's reply thereto and find the assignment of error without merit. Appellant's unsworn statement, which was the catalyst for the assigned error, recounts his family background from a low-income Indian family; his transition to service life; his disenchantment with the U. S. Navy commencing with his being assaulted aboard a Naval Station and receiving what he perceived as inadequate medical treatment and a lack of con-

cern on the part of his supervisory personnel; and culminating in his decision that he would rather be left alone to return to his people where he knew where he stood. In addition, appellant cited, as another reason for his periods of unauthorized absence, that he was tired of being the recipient of racial epithets. He then pleaded to remain in the service, stating that he had learned that going "UA" could only hurt him.

Our reading of the somewhat impassioned and histrionic arguments of trial counsel leads us to believe the prosecutor's argument was that of an adversary making fair comment on the unsworn statement of the accused. Considering the record in its entirety, moreover, we find the cogent argument of defense counsel to have had a neutralizing effect on Government's argument.

Following the announcement of sentence, the military judge spoke to appellant. The remarks, which are contended to be the evidence which shows the military judge to have been such a product of systemic and institutional racism as to preclude him from fairly and impartially participating in the sentencing process, follow:

Airman Apprentice Pickering, the unsworn statement which you made to the court was unusually intelligent and unusually articulate in this court's experience. However, the number of things that you touched on, and the number of problems that you enumerated were so great as to strain the court's ability to accept this explanation for the offenses which you have committed. To put it a little bit differently, the court felt that you protested a bit too much; and that not all of these people, in all of these places, could be out to cause problems for you as an individual, or for you because of your ethnic background, or for whatever reason. The court is not without sympathy for these things, but nevertheless adheres to the remarks that I just made. Even if these things were an explanation for some of the misconduct that is before the court, in my judgment it falls far short of explaining the number of absences that are before the court: Six absences, totalling around eight months. Accordingly, the court feels that the severe punishment which it has given in this case is warranted.

Now, I remind you—as, no doubt, your counsel will—that if you continue to indicate willingness to return to active duty and not receive a bad conduct discharge, then clemency in the form of suspension is available to the convening and supervisory authorities, based upon a request for such, and good work on your part while serving the rest of this punishment, if you choose to do that. But in good conscience, I must say that on this record I cannot recommend that action at this time.

(R.26).

The record is devoid of any objections by the trial defense counsel at trial to either the remarks of the trial counsel or to any bias or insensitivity on the part of the military judge. There were no objections at either the convening or supervisory authority levels of the reviewing process as to systemic or institutional racism.

Appellant cites *Finney v. Arkansas Board of Corrections*, 505 F.2d 194 (8th Cir. 1974) and *Meredith v. Fair*, 298 F.2d 696 (5th Cir. 1962), as judicial expositions of the way preconceived ideas, unconscious prejudices and the operation of facially neutral rules can result in an unfair, albeit unintentional, imposition of a heavier burden on minority members. He also draws our attention to the report prepared for the Secretary of Defense, DoD Report of the Task Force on the Administration of Military Justice in the Armed Forces (30 November 1972), as to how such practices have manifested themselves within the Armed Forces. That report defines "systemic discrimination" as "policies or practices which appear to be neutral in their effect on minority individuals or groups but which have the effect of disproportionately impacting upon them in harmful or negative ways. . . ." *Id.* at 19. We must therefore examine the military judge's conduct and expression to determine whether he gave appellant the

fair and impartial consideration of matters in extenuation and mitigation required by paragraph 75, *Manual for Courts-Martial, 1969 (Rev.),* or whether, by systemic discrimination, he was precluded from taking appellant's ethnic background into consideration.

Contrary to appellant's assertions, the military judge's remarks to appellant indicate that the military judge, when determining sentence, considered the unsworn statement to be "unusually intelligent and unusually articulate" but that the great number of problems enumerated by appellant strained the trial court's ability to accept appellant's explanation for the offenses committed inasmuch as the military judge did not believe that as many people in as many places as claimed by appellant were out to cause appellant problems as an individual, or because of his ethnic background, or for whatever reason. The judge then went on to state that even if these things were an explanation for some of his misconduct, they fell far short of explaining the absences that were before the court. This was not an out-of-hand rejection of appellant's ethnic background, as related to the offenses. To the contrary, the statement shows a willingness to listen to appellant's story and to sift and winnow the explanations and give each of the factors such weight as the military judge believes relevant to the task of tailoring a sentence which fits the offenses of which appellant was found guilty and the particular circumstances of appellant.

Next we must look to see if the appellant has been impacted upon in a harmful or negative way as to the sentence awarded. Considering the offenses of which the appellant was convicted, his service record, and the matters introduced by appellant in extenuation and mitigation, we find the sentence to be appropriate.

In summary, we find no evidence that the military judge in determining an appropriate sentence was the victim of any preconceived ideas or unconscious prejudices which resulted in an unintentional imposition of a heavier burden on the appellant, or of neutral policies or practices which disproportionally impacted upon appellant in a harmful or negative way.

Accordingly, the findings and sentence as approved on review below are affirmed.

Chief Judge CEDARBURG and Judge DONOVAN concur.